STATE of Missouri, Respondent,

v.

Clarence Darrell SMITH, Appellant.

No. WD 40719.

Missouri Court of Appeals,
Western District.

May 2, 1989.

Jimmie R. Nix, St. Joseph, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before BERREY, P.J., and MANFORD and NUGENT, JJ.

**PER CURIAM:**

A jury convicted defendant Clarence Darrell Smith of one count of stealing a motor vehicle, in violation of § 570.030.3(3)(a) R.S. Mo., 1986, one count of burglary in the second degree, in violation of § 569.170 R.S.Mo., 1986, and two counts of arson, in violation of § 569.050 R.S.Mo., 1986. The court sentenced defendant as a persistent offender to consecutive prison terms. He now contends that the trial court erred in overruling his motion in limine and that the evidence was insufficient to sustain his conviction. We affirm the judgment.

In reviewing the sufficiency of the evidence in this case, we consider the facts and all favorable inferences from those in the light most favorable to the state, and we reject all contrary evidence and inferences. *State v. Clark*, 652 S.W.2d 123, 124 (Mo.1983) (en banc). An appellate court will not weigh the evidence, but will determine only whether sufficient evidence appears from which reasonable persons could find the defendant guilty as charged. *State v. Porter*, 640 S.W.2d 125, 126 (Mo. 1982). Applying those principles to the case at bar, we note that the following evidence adduced at trial.

In the early morning hours of December 23, 1986, the St. Joseph Fire Department answered an alarm and dispatched its equipment to a fire on the premises of the Thrifty Nickel Want Ads. City fire inspector Michael L. Johnson testified that he arrived at the scene of the fire when the building had already been burning for thirty to forty-five minutes. After fire fighters brought the fire under control, Johnson entered the building to determine the cause of the fire and later prepared a report that the fire had an incendiary origin. The Thrifty Nickel's sales manager, Joey D. Tracy, testified that he received a telephone call at five o'clock that morning that the Thrifty Nickel office was on fire. He and his wife drove to the scene in his wife's car, leaving his black 1985 Ford EXP parked in the driveway outside their house. About one hour after they arrived at the Thrifty Nickel, Tracy and his wife received word that their house was on fire.

Fire fighters rushed the Tracys back to their house, where they had already begun battling the blaze. Charles Chandler, chief of the fire prevention bureau, investigated to determine the cause of the fire. He concluded that someone had started the fire in the northwest corner of the living room. A chemical analysis revealed the presence of gasoline in carpet samples taken from the living room.

Upon returning to his house, Tracy discovered that his 1985 Ford EXP was missing. He had left the keys to the car on the kitchen table.

That evening, two policemen saw a black Ford EXP in the parking lot next to a Radio Shack store in St. Joseph. It bore no license plates, and defendant Smith sat in the driver's seat. From their police car, the officers looked into the store and saw a second man, later identified as Marquis Sanders. His behavior aroused the officers' suspicions, so they watched him. When Sanders noticed the officers, he hurriedly left the store and got into the Ford EXP.

The Ford moved away from the store, rapidly accelerating through the parking lot with the officers in pursuit. It moved onto the Belt Highway and into the congested traffic. Ultimately, the heavy traffic forced the fleeing car to stop, and both defendant Smith and Sanders got out and started to run away.

The officers hollered "Stop," "Police," and "Halt," but both men continued running. Finally, a third police officer tackled the defendant. The defendant told the officers that his name was Rick Shackelford. He said that he had been hitchhiking from Kansas City and had been offered a ride. When the officers pointed out to him that he had driven the car, he replied that the driver of the car had become ill and had asked him to drive.

The officers took the defendant to the St. Joseph police department, where they took custody of his personal property. Among the items found on his person was a J.C. Penney gift certificate in the amount of $30.00 dated December 22, 1986. At trial, Joey Tracy testified that the same gift certificate had been hanging on his Christmas tree at home before the fire. He identified it by his J.C. Penney credit card account number on the back of the certificate.

Police found additional items from the Tracy home and the Thrifty Nickel office when they searched the defendant's apartment. In the living room of the apartment, the police found a videotape, labelled "Tracy Tape B," that had been taken from the front room of the Tracy home. In the same room of the apartment, they also found a brown case used to carry cassette tapes. Joey Tracy testified that the case had been taken from his Ford EXP.

The police also recovered from defendant's living room a check for $299.16, drawn on the Tracys' joint account and signed by Joey Tracy payable to G.F.C. for a loan payment on their house. Joey Tracy testified that he left this check lying in the top right-hand drawer of his desk at the office when he quit work on December 22, 1986.

In a drawer in the south bedroom of the defendant's apartment, the police found three checkbooks belonging to the account of Joe and Kathy Tracy. Before the fire the checkbooks had been in the bottom drawer of a dresser in the Tracys' bedroom. In addition, defendant's former girlfriend gave the police a wall clock that had been in the living room of the defendant's apartment. Joey Tracy testified that the clock had been taken from his dining room.

Joey Tracy also testified that in 1985 defendant had worked at the Thrifty Nickel and that he had known the defendant for about five years. Tracy further stated that the defendant had driven his Ford EXP in the past. When asked if any animosity existed between him and defendant Smith, Tracy replied that he could not think of any. Tracy added, however, that on one occasion the defendant had telephoned Tracy to say that he had been picked up by the police and that he needed "someone to sign to get him out of jail." When Tracy arrived at the jail, the defendant informed him that he would also need money to get out of jail. Tracy told the defendant that

he was not going to bail him out of jail and left him there.

In December of 1986, when the burglary and arsons occurred, the defendant worked at a Circle K convenience store on 51st Street in Kansas City. On December 22, 1986, he worked from two thirty until four thirty in the afternoon. After his arrest, however, he called Carol Miller, the manager of the Circle K store on Gregory Boulevard, and asked her to testify that he was working at her store on the night of the incident. She refused, saying that the payroll records would refute such a claim.

Similarly, while in jail awaiting trial, the defendant wrote a letter to Marquis Sanders, then an inmate at the Missouri Department of Corrections. In the letter, defendant Smith laid out an elaborate story that he wanted Sanders to memorize and then recite to authorities. According to the defendant's fictional account, he had introduced Sanders to Joey Tracy in a bar and Tracy then talked Sanders into burning his house down for the insurance money.

In that version of the events, the defendant had nothing to do with the burglary and arson, which Sanders and "a guy named Bruce" carried out, but, according to defendant's story, Sanders staged the crimes in a way that would implicate the defendant because Sanders was angry with the defendant over an earlier altercation. In the letter, the defendant told Sanders to learn the story "like it's your name," but to vary some of the minor details "so it don't sound rehearsed."

Arthur Dearixon, an employee of the Missouri Department of Corrections, intercepted and read the defendant's letter to Sanders during a routine monitoring of inmates' mail.

After his arrest, the defendant also contacted Joey Tracy. In March of 1987, he called Tracy and told him, "I'm going to blow your fucking head so far up your fucking ass it's going to take a space ship to find it."

Testifying on his own behalf at trial, defendant Smith denied any involvement in the incidents at the Thrifty Nickel or the Tracys' house. He stated that on the night in question he left work at midnight and went to a restaurant with Robin Edwards, his girlfriend at the time. Afterwards, they went to the Country Club Plaza to look at the Christmas lights. From there, the two returned to his apartment between 2:30 and 3:00 a.m., and remained there until about noon. Ms. Edwards also testified and corroborated the defendant's version of events.

Defendant Smith also testified about the incident with the police the following evening. He said that he ran because he saw a man with a rifle get out of the pursuing vehicle and he was scared. He also admitted giving the police a false name, but he denied that he had stolen the vehicle. He further stated that he did not recall seeing any of the Tracys' items in his apartment.

The jury convicted the defendant of stealing Tracy's car, of burglarizing the Tracys' house and of committing arson on the house and the Thrifty Nickel office.

In his first point, defendant Smith claims that the trial court erred in overruling his motion in limine in which he had attempted to suppress the letter he had written to Marquis Sanders. He contends that the use of the letter in the prosecution's case-in-chief "so prejudiced the jury that the defendant was denied a fair trial."

In the statement of this point the defendant makes no attempt to explain "wherein and why" the trial court erred in admitting the letter into evidence as part of the state's case-in-chief. Consequently, his first point fails to comply with the mandatory requirements of Rule 30.06(d). *State v. Adams*, 741 S.W.2d 781, 785 (Mo.App. 1987). Points written in violation of Rule 30.06(d) that cannot be understood without resort to the transcript or argument section of the brief, preserve nothing for appellate review. *Id.*

Nevertheless, in the exercise of our discretion, we will review the first point for plain error. *State v. Loewe*, 756 S.W.2d 177, 183 (Mo.App.1988). In his argument the defendant seems to contend that the letter was admissible for impeach-

ment purposes but was improperly admitted as part of the state's case-in-chief. However, he offers no argument or authority in support of that distinction. On the contrary, the court may admit evidence of a defendant's efforts to procure false testimony during presentation of the state's case-in-chief as evidence of the defendant's consciousness of guilt. *State v. Stapleton*, 518 S.W.2d 292, 297 (Mo.1975) (en banc). Thus, the distinction the defendant seems to urge would avail him nothing.

The defendant also seems to suggest that the inadmissibility of his letter to Sanders arose from the manner in which the prosecution obtained it. He cites *State v. Ellefson*, 266 S.C. 494, 224 S.E.2d 666 (1976), in which the prosecution used incriminating material found in the defendant's letters to his friend. The jailor, who routinely scanned prisoners' outgoing mail, allowed a detective, who had no connection with operation of the jail, to copy the defendant's letters in the course of the detective's criminal investigation. The *Ellefson* court held the letter inadmissible because the detective seized it in violation of the defendant's First and Fourth Amendment rights.

Mr. Smith does not explain how *Ellefson* applies to his own case. Nowhere in his brief does he claim an illegal search and seizure. But even if he had made such a claim on appeal, *Ellefson* would not apply here. In *Ellefson*, the detective who copied the defendant's mail had no duty to monitor prisoners' mail. He intended only to read the mail of one inmate, Ellefson, to get evidence to use against him at his upcoming trial. The court held that surveillance illegal because it had nothing to do with the broader purpose of jail security or any other legitimate jail purpose.

The surveillance in defendant Smith's case differs fundamentally from Ellefson's. Here, the monitoring of Sanders' mail occurred as part of a routine security procedure designed to uncover problems in the jail as a whole. Such monitoring of prisoners' mail does not violate the constitution. *Stroud v. United States*, 251 U.S. 15, 21–22, 40 S.Ct. 50, 52–53, 64 L.Ed. 103 (1919);

*State v. Johnson*, 456 S.W.2d 1, 3 (Mo. 1970).

Thus, however the defendant's first point is construed, the trial court correctly admitted his letter to Sanders in the state's case-in-chief.

As his second point on appeal, the defendant describes the evidence as insufficient to sustain either his conviction of arson or his conviction of burglary. In support of his claim, he contends that the prosecution failed to adduce direct evidence placing him at the Tracy house or the Thrifty Nickel office. Moreover, claims defendant, the fire inspector was unable to determine the cause of the fire at the Thrifty Nickel.

■ In fact, no direct or eyewitness testimony placed the defendant at the scene of those crimes, but that does not mean that the state could not make a submissible case against the defendant on all three charges. Arson, for example, is a crime usually committed in stealth and seldom in view of witnesses; thus the prosecutor must ordinarily prove a defendant's guilt by circumstantial evidence. *State v. Simpson*, 606 S.W.2d 514, 518 (Mo.App.1980). Both the incendiary origin of a fire and the guilty agency of the accused may be established by circumstantial evidence. *State v. Picone*, 760 S.W.2d 471, 473 (Mo.App.1988); *State v. Simpson, supra*, at 518. Similarly, all of the elements of a burglary case may be established by circumstantial evidence. *State v. Jerelds*, 637 S.W.2d 80, 81 (Mo.App.1982).

■ Here, the prosecutor clearly established the incendiary origin of the fire at the Thrifty Nickel by direct testimony. Contrary to the defendant's claim that the fire inspector could not determine the cause of the blaze, the fire inspector unequivocally reported the fire as an "incendiary fire." The defendant did not challenge that conclusion in cross-examining the inspector. In addition, the presence in defendant's apartment of items taken from the Thrifty Nickel office provided telling circumstantial evidence of the defendant's guilty agency in that arson. Three days after the fire, the police found one of the Tracys' personal checks in the living room

of the defendant's apartment. At trial, Joey Tracy testified that, just before the fire, he had left that check lying in a drawer of his desk at the Thrifty Nickel office.

Similarly, other property found on the defendant's person and in his apartment provided convincing circumstantial evidence of his guilty agency in the burglary and arson of the Tracy house. When he was arrested, he had a gift certificate that had been hanging on the Christmas tree in the Tracys' living room. Police also found various items taken from Joey Tracy's automobile in defendant's apartment. When arrested, the defendant had been driving Tracy's car, which had been parked in the Tracys' driveway at the time of the arson and burglary. The keys to the car had been lying on the kitchen table inside the Tracy home.

The defendant's behavior during and after his arrest constitutes more circumstantial evidence of his involvement in all three crimes. The following acts of appellant constitute circumstantial evidence showing his consciousness of guilt: his flight from police, *State v. Chunn*, 701 S.W.2d 578, 585 (Mo.App.1985); his use of a false name when arrested, *State v. Plant*, 694 S.W.2d 751, 754–55 (Mo.App.1985); his giving a false story to police to explain why he was driving Tracy's car, *State v. Plant, supra,* at 755; and his attempt to procure false evidence from Marquis Sanders and Carol Miller, *State v. Hogan*, 748 S.W.2d 766, 771 (Mo.App.1988); *State v. Chunn, supra,* at 585.

Also, the defendant's threatening telephone call to Joey Tracy has probative value in establishing his guilt of the offenses charged against him. *State v. Hogan, supra,* at 771, *State v. Chunn, supra,* at 585. Furthermore, his past history with the Tracys and his former employment at the Thrifty Nickel have additional probative value in assessing his guilty agency in these crimes.

■ Where convictions rest on circumstantial evidence, the facts and circumstances upon which the state relies must be consistent with each other and with the state's hypothesis of the defendant's guilt; the evidence must be inconsistent with any reasonable theory of his innocence. *State v. Rodden*, 728 S.W.2d 212, 213 (Mo.1987) (en banc). The circumstances need not, however, be absolutely conclusive of guilt, nor must they demonstrate the impossibility of innocence—the mere existence of other possible hypotheses does not remove the case from the jury. *Id.* Applying those principles to this case, we conclude that sufficient evidence existed to sustain the defendant's convictions.

Accordingly, we affirm the trial court's judgment.

All concur.