**STATE of Missouri, Respondent,**

v.

**Jack R. GREER, Appellant.**

**No. WD 39713.**

Missouri Court of Appeals,
Western District.

Feb. 6, 1990.

Jack Greer, Jefferson City, pro se.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before NUGENT, C.J., and CLARK and KENNEDY, JJ.

NUGENT, Chief Judge.

Defendant Jack Greer appeals from his conviction for first degree tampering and the ten-year sentence imposed thereon. He challenges the sufficiency of the evidence to sustain his conviction and asserts that the trial court improperly refused to instruct the jury on circumstantial evidence, erred in allowing the state to amend the information after the jury had returned its verdict, and erred in permitting the state to proceed on an information containing flaws fatal to the charge of first degree tampering. We affirm the judgment of the trial court.

The record shows that on the night in question Mr. Greer and Debbie Riley drank whiskey at Brew's Tavern in St. Joseph from about seven o'clock until about midnight. Around midnight, Mr. Greer's friend, William Watts, asked the defendant to drive home in one of his automobiles, a 1976 Nova that he described at trial as a two-door brownish sedan, painted with a red oxide primer and having a damaged rearend. Mr. Watts handed defendant Greer a set of car keys but did not explain which car he meant, assuming that Mr. Greer knew which one to drive.

The defendant pocketed the keys and sometime after midnight left the bar. About half an hour later, Ms. Riley went out to find Mr. Greer. He drove up in a black 1972 Pontiac LeMans that did not belong to him or his friend Bill Watts. He had started the Pontiac with keys that he found in the ashtray. Ms. Riley got in the car, and the defendant drove away at a high speed. Mr. Embry, the owner of the Pontiac LeMans, testified that he had not given the defendant permission to drive that car.

Shortly before 1:00 a.m., two Missouri highway patrol troopers saw the LeMans with only one illuminated headlight weaving southbound on and off U.S. Highway 59. They gave chase but the LeMans increased its speed and soon left the highway and sped along sidestreets, finally crashing into a parked car. Defendant Greer fled on foot. The troopers found an intoxicated Ms. Riley in the passenger seat. One

trooper chased Mr. Greer on foot but failed to catch him.

The defendant made his way to his brother Phil's apartment and told him, "Phil, I'm in trouble, I've wrecked Bill's car." After listening to a report of the accident on a police monitor, the brothers went to the scene of the wreck. When a trooper asked the defendant his name, he gave his brother's name.

The state charged defendant Greer by information under § 569.080 with the class C felony of first degree tampering.[1] A week later, the state amended its information to charge him under §§ 557.036.4 and 558.016 as a prior offender and under § 558.019 as a class X offender.[2]

A jury found the defendant guilty of tampering in the first degree. After the verdict, the court overruled the defendant's objection and permitted the state again to amend its information and to charge him as a persistent offender under § 558.016, rather than as a class X offender. The court further denied the defendant's motions for judgment of acquittal notwithstanding the verdict and for a new trial.

■ On this appeal, Mr. Greer first challenges the sufficiency of the evidence to sustain the verdict. He argues "that 'there has been a reasonable hypothesis of innocence' left open to him," in that the state's evidence has not eliminated a reasonable inference of his innocence. In reviewing the sufficiency of the evidence in the appeal of a criminal conviction, an appellate court considers the evidence and all favorable inferences from it in the light most favorable to the prosecution and rejects all contrary evidence and inferences. *State v. Clark,* 652 S.W.2d 123, 124 (Mo.1983) (en banc); *State v. Smith,* 770 S.W.2d 469, 470 (Mo.App.1989).

Defendant Greer specifically argues that a reasonable person could accept that he believed that Bill Watts had given him the keys to the Pontiac and thus that when he drove away from Brew's he believed he was driving the car his friend had asked him to drive. He further argues that his flight from the car crash did not prove guilt, but rather that he "didn't want to be caught on parole drinking (intoxicated) and at the accident scene."

Indeed, a reasonable person could conceivably believe that a drunken parolee might flee for fear of revocation of his parole rather than because he had committed a crime. But the evidence in this case amply supports the jury's verdict and on review we must reject all contrary evidence and inferences, as noted above.

■ The defendant next contends that the trial court committed plain error in refusing to instruct the jury on circumstantial evidence. "Relief will be granted under the plain error rule only when the error so substantially affects the rights of the accused that a manifest injustice or miscarriage of justice inexorably results if left uncorrected." *State v. Meyers,* 770 S.W.2d 312, 315 (Mo.App.1989). Moreover, "[i]nstructional error amounts to plain error only if the trial court has so misdirected or failed to instruct the jury on the law of the case as to cause manifest injustice." *State v. Ware,* 770 S.W.2d 249, 251 (Mo. App.1989).

The court committed no such error because, where the state has introduced both circumstantial and direct evidence, "the trial court need not give the circumstantial evidence instruction." *State v. Leisure,* 772 S.W.2d 674, 679 (Mo.App.1989); Missouri Approved Instructions—Criminal, 3d., note 3, instruction 310.02 (1987). Here the state's direct evidence included testimony by Ms. Riley that defendant Greer had fled from the highway patrol in the LeMans;

---

1. All sectional citations refer to Revised Missouri Statutes, 1986.

   Section 569.080 states that "[a] person commits the crime of tampering in the first degree if:

   (2) He knowingly receives, possesses, sells, alters, defaces, destroys or unlawfully operates an automobile ... without the consent of the owner thereof."

2. A person designated as one of the repeat offenders described and classified under these sections, at the discretion of the court, may receive a more stringent sentence than would a first offender convicted of the same crime.

testimony by Mr. Greer that he had started the LeMans not with the keys given to him by Mr. Watts, but with keys that he found in its ashtray; and the identification by the highway patrol troopers of Mr. Greer as the man who fled from them.

■ Next the defendant asserts, correctly, that the trial court erred in allowing the state to amend its information after the jury had returned a verdict. This error does not, however, require reversal, for the court committed only a procedural irregularity.

Section 558.021 establishes the procedure for imposition of an extended term for a variety of repeat offenders categorized in §§ 558.016 and 558.019.[3] First, the state must exhibit in its indictment or information "facts warranting a finding that the defendant is a prior offender, persistent offender or dangerous offender...." § 558.021.1(1). Next, the state must introduce evidence that proves beyond a reasonable doubt that the defendant fits into one of those three categories. § 558.021.2 requires that when the state charges a defendant as a prior, persistent or dangerous offender in a jury trial, the relevant facts "shall be pleaded, established and found prior to submission to the jury outside of their hearing...."

Errors in the application of extended term procedures can result in reversal in two ways. First, if the court fails to make a finding or makes deficient findings that the defendant fits into one of the three categories, it deprives the defendant of due process of law and a sentence rendered on the basis of § 558.021 becomes invalid.

In *Specht v. Patterson*, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967), the Supreme Court held that under recidivist statutes "an habitual criminal issue is 'a distinct issue,'" and thus, when the trial judge addresses that issue, it must accord the defendant the "safeguards which are fundamental rights and essential to a fair trial...." *Id.* at 610, 87 S.Ct. at 1212 (citations omitted). The Court held that in such a case due process "requires that he be present with counsel, have an opportunity to be heard, be confronted with witnesses against him, have the right to cross-examine, and to offer evidence of his own. And there must be findings adequate to make meaningful any appeal that is allowed." *Id.*

The Missouri Supreme Court has held in *State v. Berry*, 609 S.W.2d 948, 955 (Mo. 1980) (en banc), that § 558.021 "was enacted to comply with the mandates set forth in" *Specht.* The Missouri court noted especially that "when the imposition of an extended term goes beyond finding guilt of the felony and involves making new findings of fact, due process requires those safeguards essential in a criminal prosecution." *Id.* at 955–56.

In *State v. Thompson*, 629 S.W.2d 361 (Mo.App.1981), approved, 629 S.W.2d 369 (Mo.1981) (en banc), this court elaborated on the due process issue, holding that a determination of persistent offender "necessarily rests on new evidence not given to the jury," and, therefore, "must be found expressly as the basis for the extended term by specific findings to that effect." 629 S.W.2d at 368.

More recently we have held that the question of due process protection, and not the existence of prejudice to the defendant through an erroneous application of § 558.021, determines the reversibility of the sentence. "It is not a matter of prejudice or not that bears on the validity of the enhanced sentence, but that the extended term simply remains unadjudicated," if the court has provided no, or a deficient, hearing to determine which category of repeat offender the defendant fits into within the definitions in §§ 558.016 and 558.019.

---

3. Section 558.016.3 defines a "persistent offender" as "one who has pleaded guilty to or has been found guilty of two or more felonies committed at different times." § 558.019.4(3) defines a class X offender as "one who has previously pleaded guilty to or has been found guilty of three felonies committed at different times," and § 558.019.2 limits its application to persons currently accused of class A or class B felonies.

Section 558.021 makes specific reference to the repeat offender categories in § 558.016. § 558.019 applies the procedures mandated by § 558.021 to adjudication of class X status was well.

The Missouri Supreme Court established the second reason for reversal of a sentence imposed through § 558.021 procedures in *State v. Kilgore*, 771 S.W.2d 57 (Mo.1989) (en banc). There, the court held that procedural errors committed in the imposition of an extended sentence require reversal when they prejudice the defendant.

Thus, to obtain a reversal of his sentence, Mr. Greer must show either that the trial court denied him due process by failing to make a finding regarding his status as a repeat offender or that it committed a procedural error that prejudiced him.

In the instant case, after a colloquy with the defendant and both counsel over whether Mr. Greer fit into the class X offender category, and before submitting the case to the jury, the court found that Mr. Greer had committed three separate and unrelated felonies in the past, according to the requirements of § 558.021.1. The information clearly alleged Mr. Greer's prior felonies and complied with the requirement in § 558.021.1(2) that such facts prove beyond a reasonable doubt that he had committed previous felonies. *State v. Finch*, 746 S.W.2d 607, 611 (Mo.App.1988). Mr. Greer had the opportunity accorded him under § 558.021.4 "of confrontation and cross-examination" and "to present evidence." Thus, the court provided Mr. Greer with a hearing comporting with due process under *Specht* and *Berry*.

After the colloquy, however, the court stated, "We'll determine what kind of a class offender he is afterwards...." "Afterwards" did not occur until after submission of the case to the jury. Thus, the trial court erred.

In arguing that the trial court correctly allowed the state to amend its information after the verdict inasmuch as the amendment related solely to the applicability of § 558.016.3 and was made before the court's "finding" of its applicability, the state misinterprets the intent of Rule 23.08. In its relevant part, that rule provides that "[a]ny information may be amended or substituted for an indictment at any time before verdict or finding if no additional or different offense is charged and if a defendant's substantial rights are not thereby prejudiced." The state maintains that the "finding" occurred when the court, after the verdict, found Mr. Greer a persistent offender.

■ According to the state's interpretation, a prosecutor could amend an information charging a defendant as a member of one of the categories of repeat offenders at any time and such an amendment would necessarily precede the "finding" that the trial court would have to make regarding the defendant's category. But that conflicts with § 558.021.2's requirement that the court's findings come before submission of the case to the jury. We cannot agree that the Missouri Supreme Court intended that prosecutors employ Rule 23.08 to nullify the legislature's intent in § 558.021.2.

Nevertheless, under *Kilgore, supra*, we cannot reverse the extended term imposed because the trial court's procedural irregularity did not prejudice Mr. Greer. In fact, he received a lighter sentence as a persistent offender than he would have as a class X offender, for § 558.019.2(2) requires that a persistent offender serve at least sixty per cent of his sentence, whereas § 558.019.2(3) requires class X offenders to serve at least eighty per cent of their sentences. Moreover, the state had no choice but to amend its first amended information in which it erroneously charged Mr. Greer as a class X offender.

■ Defendant Greer next contends that the trial court lacked jurisdiction to try and sentence him because the state did not include in its informations the name of the owner of the LeMans, and, therefore, presented to the court fatally defective informations. He further alleges that the court thus deprived him of due process.

The state's information mirrored Missouri Approved Charge—Criminal (MACH–Cr) 23.21, which outlines the format for a first degree tampering charge. MACH–Cr 23.21, a legal form approved by the Supreme Court, does not require the name of

the auto's owner, and we have neither the inclination nor the authority to do so.

Furthermore, Mr. Greer could have requested a bill of particulars at any time during the proceedings. He did not, and we see no reason to believe that the information in any way deprived him of his right due process. *See State v. Stark,* 728 S.W.2d 301, 303 (Mo.App.1987).

For the foregoing reasons, we affirm the trial court's judgment.

All concur.