STATE of Missouri, Respondent,

v.

Loyd Wayne TINCHER, Appellant.

No. 16413.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 6, 1990.

Motion for Rehearing or Transfer to
Supreme Court Denied Sept. 28, 1990.

Application to Transfer Denied
Nov. 20, 1990.

Susan L. Hogan, Columbia, for appellant.

William L. Webster, Atty. Gen., Robert P. Sass, Asst. Atty. Gen., Jefferson City, for respondent.

WASSERSTROM, Senior Judge.

A jury found defendant guilty of burglary in the second degree, and the trial judge sentenced him to imprisonment for twelve years as a persistent offender. Defendant appeals, asserting as error: (1) insufficiency of the evidence; and (2) failure of the trial judge to find that defendant was a persistent offender prior to the submission of the case to the jury.

## I

### Sufficiency of the Evidence

■ In reviewing the sufficiency of the evidence, an appellate court considers the facts and all inferences therefrom in a light most favorable to the State and rejects all contrary evidence and inferences. It will not weigh the evidence but will determine only whether sufficient evidence appears from which reasonable persons could find defendant guilty as charged. *State v. Smith*, 770 S.W.2d 469 (Mo.App.1989); *State v. Greer*, 783 S.W.2d 527, 529 (Mo. App.1990). Applying those rules, the facts here may be stated as follows.

On August 4, 1988, Officer Martin passed Johnson Electric Company shortly after 11:00 p.m. and noticed two inner doors open which he had seen closed on an earlier patrol. As he pulled in to the Johnson Electric parking lot, Martin saw two men burst out of a door and run hard into an adjacent field of high weeds. One of the men was about five feet six inches tall and the other about six feet tall. The taller man wore a dark-colored pullover type shirt and dark pants. The field into which the men ran was wet and muddy, and Martin could follow their tracks for a short distance.

Martin then called Todd Johnson, owner of the burglarized premises, to notify him of the break-in. Johnson quickly arrived and found two of the company trucks inside the building loaded with company property and a third truck in the process of being loaded. The trucks and the contents had been moved from where they had been located when Johnson had locked up the premises for that night, and no permission had been granted anyone to remain on or enter the premises after he had locked up. Entry apparently had been gained through a rear window from which two bars had been removed.

Martin also called Officer Barksdale for assistance. Barksdale notified two neighboring businesses which were still open, one of which was the Steadley Company, to be on the lookout. Less than an hour after the break-in at Johnson Electric, someone at Steadley called the police to announce the presence of a suspicious person in their area.

Barksdale went to the Steadley plant to investigate and checked into woods west of the Steadley parking lot, where he found defendant lying on the ground. This was two to three blocks from the Johnson Electric plant. Defendant at that time was dressed in a maroon-colored T-shirt, blue jeans and tennis shoes. His clothing was wet and his shoes muddy. He gave Barksdale the false name of Wayne Cantrell.

As part of his investigation, Barksdale also observed a car with Arkansas license plates in the Steadley parking lot. He assigned another officer to keep the car under observation. Later, when the car moved, it was stopped by the police and the driver, Ricky Leroy, was arrested. It was subsequently established that Leroy and defendant are cousins, both are from Arkansas, they had lived together and had been seen together in Gravette by an Arkansas police officer during the latter part of the previous June.

The car was subjected to an inventory search the next morning and was found to contain two shirts, one black and the other dark blue, gloves, and a Missouri road map on which had been written the phone num-

ber of Johnson Electric Company. As part of the investigation, the police found shoe prints inside the Johnson Electric plant. An expert witness testified that Leroy's shoes had distinctive markings which exactly matched a set of footprints found at Johnson Electric. Defendant's shoes were identified by the expert as having the same size, brand and tread pattern as other prints found in the Johnson Electric plant, although defendant's shoes had no individual characteristics that would distinguish them from other shoes of the same brand and size.

■ Defendant charges in his Point on Appeal: (1) that "the evidence introduced at trial was insufficient to sustain appellant's conviction for second degree burglary, because there was no evidence that appellant actively or affirmatively participated in the burglary, as the State failed to prove beyond a reasonable doubt that appellant entered the Johnson Electric Company." As to defendant's participation in the burglary, the evidence abundantly permitted an inference that he did so. The evidence from which the jury could reasonably infer his participation included the following: (1) defendant was found hiding during the early morning hours, lying on uncomfortable wet and muddy ground; (2) this was an area in which defendant did not live and where he had no apparent legitimate interest; (3) this effort to hide was within an hour of the burglary and within two to three blocks of the burglarized premises; (4) defendant met the physical characteristics of one of the men Officer Martin had seen running from the burglarized premises; (5) defendant gave a false name when he was discovered by Officer Barksdale; (6) a car with Arkansas license plates was parked near defendant's hiding place, in which car Leroy tried to escape; (7) that car contained a Missouri map on which was written the phone number of Johnson Electric Company; (8) Leroy was defendant's cousin with whom defendant was known to have associated in Arkansas.

■ Still further evidence answers defendant's particularized complaint in his point that the State failed to prove that he had entered the burglarized premises. This evidence consisted of the fact that defendant's shoes matched footprints found within the burglarized premises. This type of evidence is well recognized as substantial proof of a defendant's participation in a burglary. *State v. McGlathery,* 412 S.W.2d 445 (Mo.1967); *State v. Patterson,* 725 S.W.2d 888 (Mo.App.1987); *State v. Gorka,* 782 S.W.2d 718 (Mo.App. 1989).

■ Defendant argues that the footprint evidence did not "conclusively put him inside the building." The State had no such burden. It sufficed that the jury could infer guilt from the evidence as a whole beyond a reasonable doubt. The same answer applies to defendant's sniping at the slight variance in the shirt described by Officer Martin as being worn by the taller man running from Johnson Electric Company as compared to the shirt worn by defendant when he was found hiding by Officer Barksdale—such variance was simply a matter for consideration by the jury.

Viewing the evidence most favorably to the State, as it must be, it was amply sufficient upon which the jury could infer defendant's guilt. Though the proof was circumstantial, it met the requirement of being consistent with guilt and inconsistent with any reasonable theory of innocence. *State v. Rodden,* 728 S.W.2d 212 (Mo. banc 1987); *State v. Richardson,* 719 S.W.2d 884 (Mo.App.1986); *State v. Dayringer,* 755 S.W.2d 698 (Mo.App.1988). As stated under somewhat similar evidence in *State v. Gorka,* supra: " * * * possible theories of innocence, however, are too tenuous to destroy the efficacy of the strong circumstantial evidence above and there was sufficient evidence to submit the case to the jury."

Defendant cites and relies upon *State v. Cook,* 697 S.W.2d 272 (Mo.App.1985), and *State v. White,* 665 S.W.2d 359 (Mo.App. 1984). Those cases are clearly distinguishable on the facts and do not conflict with the views expressed above.

Defendant's Point One is denied.

## II

### *Procedure in Connection with the Imposition of Enhanced Punishment*

■ Defendant contends for his second point that the trial court failed to comply with § 558.021, RSMo 1986, in that it did not find appellant to be a persistent offender prior to submitting this case to the jury. This matter assumes importance because the sentence imposed of twelve years is within the fifteen-year maximum provided for a persistent offender convicted of a Class B felony, but is beyond the seven year maximum permitted if the accused is not subject to an extended term as a persistent offender. The sentencing here, therefore, must fall unless the persistent offender finding can withstand attack.

The pertinent facts in this connection are as follows. Prior to calling the jury, the trial court received evidence on the State's allegations that defendant was a prior offender and also a persistent offender. The prosecution offered evidence of two prior felony convictions of defendant in Arkansas. Defense counsel had no objection as to one of those convictions but did make objection concerning the sufficiency of proof as to the second conviction. In response, the Prosecuting Attorney suggested that the court find defendant to be a prior offender based on the admitted conviction and reserve ruling as to whether defendant was a persistent offender. The trial court adopted that suggestion.

Nothing further occurred with respect to this matter until the hearing on the motion for new trial and sentencing, at which time the trial court, over defendant's objections, found that defendant had been convicted of two specifically described prior felonies and found him to be a persistent offender as well as a prior offender, and the court then proceeded to impose a sentence of twelve years.

Defendant does not challenge the evidence on which the finding of persistent offender was made nor the finding itself. His sole objection goes to the timing of the finding, which occurred after, not before, submission of the case to the jury. In this respect, the trial court's procedure unquestionably departed from the statutory mandate of § 558.021.2, and therefore constitutes error. The question for decision here is what results by reason of that error.

■ Defendant contends the error goes to the trial court's jurisdiction to impose an extended term and therefore requires remand of this case for the purpose of re-sentencing of defendant as simply a prior, but not a persistent, offender. He cites in this connection *State v. Moore*, 633 S.W.2d 140 (Mo.App.1982), and *State v. Porter*, 641 S.W.2d 843 (Mo.App.1982). In both those cases, the holding was that following the statutory procedure in connection with imposing enhanced punishment was jurisdictional in the sense that any error in the sentencing must be reviewed even if not properly preserved. Those decisions are not apropos here.

■ Where, as in the present case, proper findings of persistent offender status have been made on proper evidence, the effect of an error in the timing of the findings (that is, the findings are made after rather than before the jury verdict) depends on whether the error was prejudicial. *State v. Richardson*, 719 S.W.2d 884 (Mo.App.1986); *Scharnhorst v. State*, 775 S.W.2d 241, 246, footnote 4 (Mo.App. 1989); *State v. Wynn*, 666 S.W.2d 862, 864–5 (Mo.App.1984). In the case last cited, the court's analysis is so acute and pertinent as to warrant extensive quotation:

"The failure to comply with the statutory procedure was more than a mere irregularity; it constituted error. The question is whether the error was prejudicial. We have concluded that the procedure employed, although subject to criticism if not censure, did not affect the substantial rights of appellant and is to be characterized as harmless error. See *State v. Chunn*, 636 S.W.2d 166 (Mo. App.1982). It is difficult to see how defendant suffered any actual prejudice by reason of the fact that the persistent offender hearing was conducted after in-

stead of prior to submission to the jury. The central fact of importance and substance is that defendant is a persistent offender, as was amply demonstrated, in which case the Court, not the jury, determines punishment upon a finding of guilt. The subsection does not provide what results shall follow a failure to comply with its terms, and generally in such case a statute is held to be directory and not mandatory, *Garzee v. Sauro*, 639 S.W.2d 830, 832[1] (Mo.1982); *Hedges v. Department of Social Services of Missouri*, 585 S.W.2d 170 (Mo.App.1979), particularly in the case of a statute specifying a time within which an official act is to be performed, 'with a view merely to the proper, orderly and prompt conduct of the business.' *State ex inf. Gentry v. Lamar*, 316 Mo. 721, 291 S.W. 457, 458 (1927). The State, by failing to introduce the persistent offender evidence at the prescribed time did not thereby waive its right to make proof thereof before sentencing. Nor was the State estopped to do so by reason of the manner in which the matter was handled. Defendant acquired no vested right to have the jury assess the punishment by reason of the failure to conduct the hearing at the prescribed time. It is true that if the proof had never been made the conviction would have to be set aside; in that event the failure to submit the question of punishment to the jury would have been fatal to the verdict; but it *was* made, even if tardily."

The lack of prejudice in the present case is even more clear than in *Wynn*. In this case, the trial court made a timely finding, well before submission, that defendant was a prior offender. In view of that finding, sentencing would be by the court, not by the jury, regardless of whether defendant was found to be a persistent offender. Before sentencing, the court did find defendant to be a persistent offender, and its imposition of the extended term was within its jurisdiction and discretion.

Defendant's Point Two is denied.

Neither of defendant's points being meritorious, the judgment and sentence is affirmed.

FLANIGAN, P.J., and MAUS, J., concur.