STATE of Missouri, Respondent,

v.

James MOSELY, Appellant.

No. 63666.

Missouri Court of Appeals,
Eastern District,
Division One.

April 12, 1994.

S. Paige Canfield, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Mary Moulton Bryan, Asst. Atty. Gen., Jefferson City, for respondent.

CRIST, Judge.

Defendant appeals his convictions for second degree burglary and misdemeanor stealing. We affirm.

On April 25, 1992, at approximately 3:15 p.m., Roger Kash left his family home at 4759 Westminster in the City of St. Louis to take his trash to a dumpster in the alley next to his home. At this time, Kash observed several 3–foot lengths of copper piping on the ground and a small shopping cart in back of his neighbor's garage at 4757 Westminster. He went back into his house and retrieved a second bag of trash. At this time, he saw the copper piping had been bent and placed in the shopping cart. Suspicious, Kash went back to his house and stood on his deck. From his deck, Kash saw a man in his neighbor's backyard standing close to a stairwell which entered the house basement. Kash clearly viewed the man. At this time, Kash entered his home and called 911.

Inside his house from the second floor, Kash continued to observe his neighbor's backyard. Kash saw the man walking back and forth between the house and shopping cart while carrying copper pipe. Kash never

actually saw the man enter the house. Kash then saw him leave the premises, pushing the cart down the alley. Within a few minutes, the police arrived and Kash told them the man had just left down the alley. Officer Timothy Kavanaugh saw Defendant down the alley pushing a shopping cart and detained him. Kash subsequently identified Defendant as the man he observed in his neighbor's backyard. Inside the shopping cart were copper tubing, an extension cord, some tools, and a painting. Also discovered in the cart was a pry bar. Upon further investigation of the residence at 4757 Westminster, Officer Ronald Hasty located a small open window which had pry bar marks on the pane. He also observed a footprint in some dry wall dust on the first floor.

The owners of the residence, Pete and Margie Williams, identified the copper tubing, extension cord, tools, and painting as their property. Pete Williams testified at trial he had been replacing the plumbing and the copper tubing and tools had been in the basement. He further testified the painting had been in his daughter's room on the second floor. Both stated the pry bar also found with Defendant did not belong to them.

The State charged Defendant as a prior and persistent offender with second degree burglary and misdemeanor stealing. A jury convicted Defendant of both counts and the judge sentenced Defendant to fifteen years' imprisonment for second degree burglary and a concurrent term of six months for the stealing charge.

On appeal, Defendant first contends insufficient evidence existed to convict him of second degree burglary because the "evidence did not refute a reasonable hypothesis of innocence...."

■ Defendant relies upon an incorrect standard of review. Our Supreme Court in *State v. Grim*, 854 S.W.2d 403, 406–07[2] (Mo. banc 1993), abolished the circumstantial evidence rule. In doing so, the Court found:

We no longer need to hold circumstantial evidence cases to a higher standard than direct evidence cases. If a jury is convinced beyond a reasonable doubt, so long as the evidence meets the minimal appel-

late standard required by due process, we need not disturb the result simply because the case depended wholly, mostly, or partially upon circumstantial proof.

*Id.* at 406. The minimal appellate standard of review required by due process is:

On review, the Court accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence and disregards all evidence and inferences to the contrary. [Citation omitted.] In reviewing a challenge to the sufficiency of the evidence, appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt.

*Grim*, 854 S.W.2d at 405[1], *quoting, State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989).

■ Section 569.170, RSMo 1986, establishes the crime of second degree burglary whenever a person "knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein." Defendant avers the State failed to show he entered the building at 4757 Westminster.

Sufficient evidence was presented at trial from which a reasonable juror could have found Defendant entered the house at 4757 Westminster. First, the Williamses' neighbor Kash saw Defendant in the house's backyard and observed Defendant placing copper tubing in a shopping cart. Neither of the Williamses knew Defendant or had given him permission to be on the premises. The police apprehended Defendant in the alley near the house moments after Kash saw him. Defendant was pushing a shopping cart containing several items, which the Williamses later identified as their property. The Williamses further testified the property had been inside the house when they had last seen it.

Also discovered in the shopping cart was a pry bar. Officer Hasty testified unique marks on the end of the pry bar matched those found on a window to the house. In addition, Hasty also observed a shoe print in the white drywall dust on the first floor. He testified the pattern on the bottom of the

shoes Defendant was wearing at the time he was arrested appeared to match those in the dust. He also stated Defendant's shoes had what appeared to be white dust on the bottom of them. The trial court did not err in failing to grant Defendant's motion for judgment of acquittal and motion for new trial. *Cf. State v. Tincher*, 797 S.W.2d 794, 796[3] (Mo.App.1990); *State v. Gorka*, 782 S.W.2d 718, 719[2] (Mo.App.1989); *State v. Patterson*, 725 S.W.2d 888, 889–90 (Mo.App.1987). Point denied.

■ In Point II, Defendant challenges the trial court's denial of his motion pursuant to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) where the State "struck a Black venireperson from the panel ... [and] the State's explanation for striking the jurors was merely a pretext for discrimination and not a legitimate race-neutral reason for the strike." Appellate review of the trial court's ruling is limited to determining if it is clearly erroneous. *State v. Pullen*, 843 S.W.2d 360, 362–63[3] (Mo. banc 1992).

■ Whenever a defendant properly challenges the State's peremptory strikes, the State is required to come forward with race-neutral explanations for those strikes. *State v. Parker*, 836 S.W.2d 930, 939[12] (Mo. banc 1992). Proffered reasons are deemed race-neutral unless a discriminatory intent is inherent. *Pullen*, 843 S.W.2d at 362[1]. "To be sufficient the explanation need only be race-neutral, reasonably specific and clear, and related to the particular case to be tried." *Parker*, 836 S.W.2d at 934[5].

■ Once the State declares its race-neutral reasons, the defendant bears the burden of showing said reasons are pretextual and the State's strikes were racially motivated. *Id.* at 939[12]. In considering whether the defendant has carried the burden of proof, "[t]he chief consideration should be the plausibility of the prosecutor's explanations in light of the totality of the facts and circumstances surrounding the case." *Id.* at 939[13]. In considering the totality of the circumstances, the trial court may consider any facts giving credence to the proffered explanations, including: (1) the existence of similarly situated white jurors who were not struck; (2) degree of logical relevance between the proffered reason and the case; (3) prosecutor's demeanor or statements; (4) the court's past experiences with the prosecutor; and (5) objective factors bearing on the prosecutor's motive to discriminate, such as the race of the defendant, material witnesses, and victim. *Id.* at 939–40[14].

■ Defendant's brief fails to clearly identify which of the State's peremptory strikes he believes were racially motivated. In his point relied on, Defendant asserts error where the State "struck *a* Black venireperson...." (Emphasis added.) Then, in his argument, Defendant quotes the State's proffered reasons for five venirepersons, but never clearly challenges any of the alleged reasons. However, in his motion for new trial, Defendant only challenged the strikes of Venirepersons Luckey and McGee. If any error is preserved, it is only regarding those strikes.

Defendant primarily relies upon *State v. Smith*, 791 S.W.2d 744, 749 (Mo.App.1990), wherein the court stated a peremptory strike could not be justified by the rote neutral explanation that a venireperson was a government employee. However, in the case at hand, none of the stricken venirepersons were government employees, nor did the State aver it was striking any of them because they were government employees. Therefore, the rationale of *Smith* is inapplicable.

■ The State's justification for striking Venireperson Luckey was his brother had been convicted of kidnapping and further, Luckey had a history of sporadic employment, resulting in a lack of stake in the community. Its reason for striking Venireperson McGee was also because she was unemployed and had no stake in the community. In response to these reasons, defense counsel averred:

But I guess I am getting—What I am getting at is like, you know, a lot of this stuff is subjectives. I do feel like this business about stake in the community, it doesn't have anything to do with anything. Cause basically if you're going to say that somebody that's had a number of jobs has

no stake in the community, you know, what about people that have never had a job. These people are trying to work. Jobs are hard to find. Fellow had gotten laid off from Steak and Shake after four years and he's out there pounding; like to make a living, make ends meet. I think that's totally hypocritical.

The reasons stated by the prosecutor were race-neutral. They were clear, reasonably specific, and legitimate. *See, State v. Antwine*, 743 S.W.2d 51, 64 (Mo. banc 1987) (peremptory challenges are subjective, requiring prosecutor to rely upon, *inter alia*, employment status); *State v. Robinson*, 832 S.W.2d 941, 944[8] (Mo.App.1992) (striking unemployed persons before those employed is not racially motivated). In contrast, Defendant has failed in his burden of showing the proffered reasons were pretextual. Legitimate hunches are still a proper basis for peremptory strikes. *Pullen*, 843 S.W.2d at 364. Merely arguing said hunches are subjective is not enough to show the "hunches" are pretextual to cover up racially motivated strikes. Point denied.

In Point III, Defendant contends the trial court erred in submitting Instruction No. 4, the reasonable doubt instruction patterned after MAI–CR3d 302.04, because that instruction unconstitutionally suggests a higher degree of doubt than required for acquittal. The reasonable doubt instruction has been upheld as constitutional by the Missouri Supreme Court. *State v. Griffin*, 848 S.W.2d 464, 469[8] (Mo. banc 1993). We are bound by that decision. Point denied.

Judgment affirmed.

CRANDALL, P.J., and REINHARD, J., concur.