**STATE of Missouri, Respondent,**

v.

**Scott MCLAUGHLIN, Appellant.**

**No. ED 90801.**

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 30, 2008.

Timothy J. Forneris, Assistant Public Defender, St. Louis, MO, for appellant.

Shaun J. Mackelprang, Assistant Attorney General, Jefferson City, MO, for respondent.

PATRICIA L. COHEN, Judge.

## Introduction

Scott McLaughlin ("Defendant") appeals from a judgment convicting him of second-degree burglary on the grounds that: (1) the trial court abused its discretion by allowing hearsay evidence to be admitted under the "forfeiture by wrongdoing" doctrine in violation of his rights under the Sixth Amendment's Confrontation Clause; and (2) the evidence was insufficient to prove beyond a reasonable doubt that he "knowingly entered unlawfully" a building or inhabitable structure as required by Mo.Rev.Stat. § 569.170 (2000). We affirm.

## Background

On October 23, 2003, City of Moscow Mills police arrested Defendant for burglarizing the mobile home of his former girlfriend, Beverly Guenther. On the day of the burglary, Ms. Guenther's neighbor, Bruce Aurich, noticed that the door to Ms. Guenther's trailer was open, which he thought was suspicious, knowing that Ms. Guenther was at work and that she lived alone. Subsequently, Mr. Aurich called Ms. Guenther at work to tell her about the open door, and she instructed him to call the police. After calling 9–1–1, Mr. Aurich saw Defendant coming from the back of Ms. Guenther's home carrying items from the trailer to his car. At one point, Mr. Aurich watched Defendant drag Ms. Guenther's six-by-nine foot deep freezer across the yard. Mr. Aurich, however, could not see the back door of Ms. Guenther's trailer and was unable to see Defendant enter or exit the trailer.

Upon their arrival, the police saw Defendant sitting in his car, which was parked in a vacant lot behind Ms. Guenther's mobile home. After Defendant saw the officers, he backed out of the lot and quickly drove off. The officers followed Defendant, with lights and sirens on, in a high-speed pursuit for approximately six to eight miles. The chase ended as Defendant came upon a roadblock, where he pulled over and surrendered peacefully. The officers searched Defendant's car and found several items, including a stereo, tool box, makeup kit, and bed sheets. The police then contacted Ms. Guenther and asked her to meet them at the police station.

At the station, the police informed Ms. Guenther of the burglary, and Ms. Guenther gave a statement to the officers. Ms. Guenther told the police that everything that had been seized from Defendant's car belonged to her. She also said that Defendant did not have permission to be in her home when she was not there. Ms. Guenther explained that she and Defendant had previously dated for about a year and a half, but had broken up earlier that year. She also told the officers that, since their break-up, she had obtained a restraining order against Defendant.

A week later on October 31, 2003, Ms. Guenther completed a victim-impact statement for the Lincoln County prosecutor's office in which she explained how the burglary had affected her life. In it, Ms. Guenther stated that Defendant would constantly call and stalk her and that he had threatened her and her friends. She also described how Defendant harassed her at her work, cut up her shoes and put them in the back of her truck, and watched "everything" she did. Ms. Guenther said that because of Defendant's actions, she no longer felt safe in her home or at work.

In late November 2003, Defendant murdered Ms. Guenther. A jury convicted Defendant of first-degree murder, rape, and armed criminal action, for which Defendant received a death sentence and two consecutive life sentences. The Missouri Supreme Court affirmed his conviction and sentence on August 26, 2008. *State v.*

*McLaughlin,* 265 S.W.3d 257 (Mo. banc 2008).

Before Defendant's burglary trial in October 2007, the State filed a motion seeking to introduce at trial Ms. Guenther's hearsay statements to the police and her victim-impact statement under the theory of "forfeiture by wrongdoing." Defendant objected to the motion claiming that admittance of the hearsay evidence would violate his Sixth Amendment right to confront the witnesses against him. The trial court permitted the State to introduce the hearsay statements on the grounds that Defendant, by killing Ms. Guenther and thereby procuring her unavailability as a witness at trial, forfeited his right to confrontation.

At trial, the State introduced Ms. Guenther's hearsay statements through Mr. Aurich, Officer Steve Runge, the arresting officer who took Ms. Guenther's statement, and Michelle Kroner–Douglas, a victim's advocate for the Lincoln County Prosecutor's office. Defendant presented no evidence on his behalf. The jury found Defendant guilty of second-degree burglary and Defendant was sentenced to seven years' imprisonment. Defendant appeals.

### Discussion

*A. Forfeiture by Wrongdoing Exception to the Confrontation Clause*

■ In his first point, Defendant contends that the trial court abused its discretion by admitting Ms. Guenther's hearsay

statements in violation of his rights under the Sixth Amendment's Confrontation Clause. More specifically, Defendant claims that Ms. Guenther's unconfronted testimony was inadmissible under the theory of "forfeiture by wrongdoing" because the State failed to show that Defendant intended to kill Ms. Guenther to prevent her from testifying at his trial.

Generally, we review a trial court's admission of hearsay testimony for an abuse of discretion. *State v. Justus,* 205 S.W.3d 872, 878 (Mo. banc 2006). Whether admitted evidence violates the Confrontation Clause, however, is a question of law, which we review *de novo. Id.*

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. CONST. amend VI.[1] In *Crawford v. Washington,* the United States Supreme Court held that a criminal defendant's Sixth Amendment right to confrontation prohibits the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." 541 U.S. 36, 53–54, 124 S.Ct. 1354, 1365, 158 L.Ed.2d 177 (2004).[2]

Prior to *Crawford,* the U.S. Supreme Court recognized, as an exception to a defendant's confrontation rights, the "forfeiture by wrongdoing" doctrine and described it as follows:

---

1. *See also* MO. CONST. art. I, § 18(a) ("[I]n criminal prosecutions the accused shall have the right ... to meet the witnesses against him face to face....").

2. The State concedes that Ms. Guenther's statement to the police and her victim-impact statement were "testimonial" within the meaning of the Confrontation Clause. *See Crawford,* 541 U.S. at 51–52, 124 S.Ct. 1354 (describing the various forms of "testimonial" statements as those which a declarant "would

reasonably expect to be used prosecutorially," and to "be available for use at a later trial,"); *Davis v. Washington,* 547 U.S. 813, 822, 830, 126 S.Ct. 2266, 2273, 2278, 165 L.Ed.2d 224 (2006) (holding that statements given in response to formal police questioning are testimonial when the purpose of the interrogation is "to investigate a possible crime", rather than "to enable police assistance to meet an ongoing emergency.").

The Constitution gives the accused the right to a trial at which he should be confronted with the witnesses against him; but if a witness is absent by his own wrongful procurement, he cannot complain if competent evidence is admitted to supply the place of that which he has kept away. The Constitution does not guarantee an accused person against the legitimate consequences of his own wrongful acts.

*Reynolds v. United States*, 98 U.S. 145, 158, 25 L.Ed. 244 (1878). The *Crawford* Court approved "the rule of forfeiture by wrongdoing" as an exception to the Confrontation Clause noting that it "extinguishes confrontation claims on essentially equitable grounds...." *Id.* at 62, 124 S.Ct. 1354 (citing *Reynolds*, 98 U.S. at 158–59).

At the time of Defendant's burglary trial, Missouri courts did not require the State to prove that the defendant's wrongdoing was intended to prevent the witness from testifying at trial in order to introduce unconfronted testimony under the forfeiture by wrongdoing doctrine. Accordingly, the trial court did not make an express finding of Defendant's intent and admitted Ms. Guenther's hearsay statements reasoning that "Defendant was convicted of murdering his victim in an unrelated case and this Court will not permit him to benefit from that wrongdoing."

Following Defendant's conviction and sentencing, the United States Supreme Court issued its decision in *Giles v. California*, which specifically addressed the intent requirement with respect to the forfeiture by wrongdoing doctrine. —— U.S. ——, 128 S.Ct. 2678, 171 L.Ed.2d 488 (2008). The *Giles* Court held for the first time that for the forfeiture by wrongdoing doctrine to apply, the State must show that the defendant's committed wrongdoing with the intent to prevent the witness from testifying at trial. *Id.* at 2682–88.

■ Relying on *Giles*, Defendant argues that this Court should reverse his conviction because the State failed to show that Defendant killed Ms. Guenther with the intent to prevent her from testifying. It is well settled that "a trial court's ruling on the admissibility of evidence will be upheld if it is sustainable on any theory." *State v. Worrel*, 933 S.W.2d 431, 436 (Mo.App. W.D.1996). Accordingly, we will sustain Defendant's conviction if the evidence of Defendant's intent presented at trial was sufficient to apply the forfeiture by wrongdoing doctrine under *Giles*.

When addressing the application of the forfeiture doctrine to cases involving domestic violence, the *Giles* Court expressly identified the types of evidence probative in finding a defendant's intent to prevent the victim from testifying at trial. 128 S.Ct. at 2693. Specifically, the Court stated that evidence of "[e]arlier abuse, or threats of abuse, intended to dissuade the victim from reporting to outside help" and "evidence of ongoing criminal proceedings at which the victim would have been expected to testify" would be "highly relevant" to "support a finding that the crime expressed the intent to isolate the victim and to stop her from reporting abuse to the authorities or cooperating with a criminal prosecution—rendering her prior statements admissible under the forfeiture doctrine." *Id.*

In this case, the evidence before the trial court was precisely the type of evidence specified in *Giles*. In her victim-impact statement, Ms. Guenther explained that Defendant threatened her and her friends, and that he showed up at her job and watched "everything" that she did. Significantly, Defendant's abusive and threatening conduct occurred at the time he was charged with burglarizing Ms. Guenther's

trailer and was done in spite of a restraining order against him. Additionally, the State established that Defendant murdered Ms. Guenther within one month after Defendant was formally charged with burglarizing her mobile home.

We also note that our Supreme Court addressed the application of the forfeiture by wrongdoing doctrine in this case in its opinion affirming Defendant's murder conviction. *State v. McLaughlin*, 265 S.W.3d 257 (Mo. banc 2008). The Supreme Court, in affirming the trial court's decision to admit Ms. Guenther's hearsay statements in Defendant's murder trial, held that the trial court's finding that Defendant intended to make Ms. Guenther unavailable as a witness in the burglary case was "supported by ample evidence." *Id.* at 273 n. 10. Specifically, the Supreme Court found that evidence of "Ms. Guenther's statements prior to her death about defendant's stalking of her, threats to her, and abusive conduct" as well as the fact that "[t]he police were prosecuting [Defendant] for burglary of [Ms. Guenther's] home less than a month prior to the murder ..." was sufficient evidence to support the trial court's findings. *Id.* The Supreme Court unequivocally concluded that "evidence of her statements about [Defendant's] attacks on her and comments to her c[ame] squarely within the type of evidence *Giles* states is admissible under the forfeiture by wrongdoing doctrine." *Id.* at 272–73.

In light of our review of the record and our Supreme Court's affirmance of admission of the identical evidence on identical grounds, we conclude that the trial court properly admitted Ms. Guenther's statements under the forfeiture by wrongdoing doctrine. Point denied.

### B. Sufficiency of the Evidence

■ In his second point, Defendant challenges his burglary conviction on the grounds that the evidence was insufficient to prove beyond a reasonable doubt that he "knowingly entered unlawfully" Ms. Guenther's mobile home. Under Section 569.170 of the Missouri Revised Statutes, "[a] person commits the crime of burglary in the second degree when he *knowingly enters unlawfully* or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein." (emphasis added). Specifically, Defendant claims that the State failed to prove that he entered the mobile home because Ms. Guenther's neighbor, Mr. Aurich, testified only that he saw Defendant walking to and from the mobile home, but never saw him "enter" it.

In determining the sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict, accepting all inferences in favor of the State, and disregarding all evidence and inferences contrary to a finding of guilt. *State v. Minner*, 256 S.W.3d 92, 94 (Mo. banc 2008). "If a jury is convinced beyond a reasonable doubt, we need not disturb the result simply because the case depended wholly or mostly upon circumstantial proof, so long as the evidence meets the minimal appellate standard required by due process." *State v. Brooks*, 158 S.W.3d 841, 848 (Mo.App. E.D.2005) (citing *State v. Grim*, 854 S.W.2d 403, 406 (Mo. banc 1993)). Therefore, the absence of direct evidence of Defendant's unlawful entry does not permit reversal if the verdict is supported by reasonable inferences drawn from other circumstantial evidence. *See, e.g., State v. Mosely*, 873 S.W.2d 879, 881–82 (Mo.App. E.D.1994); *State v. Tincher*, 797 S.W.2d 794, 796 (Mo.App. S.D.1990).

Based on this record, there was sufficient circumstantial evidence to support the finding that Defendant unlawfully entered Ms. Guenther's mobile home. First, Mr. Aurich testified that he noticed Ms.

Guenther's door open and then saw Defendant coming from the back of the mobile home carrying "things from the house" to his car. He then saw Defendant drag Ms. Guenther's six-by-nine foot deep freezer across the yard, to which he testified, "I don't know how she got it out of the house." Responding to Mr. Aurich's 9–1–1 call, the police found Defendant in his car behind Ms. Guenther's home. Ms. Guenther identified all of the items found in Defendant's car as her personal belongings and stated that Defendant did not have permission to be in her home when she was not there. Finally, Defendant fled the scene upon the arrival of the police. *See State v. Reed,* 971 S.W.2d 344, 347 (Mo. App. W.D.1998) (A defendant's flight is relevant circumstantial evidence that indicates a "consciousness of guilt and a desire to avoid trial."). Based on the above evidence, a reasonable inference could be made that Defendant entered Ms. Guenther's home in order to obtain the items found in Defendant's car. Point denied.

### Conclusion

Defendant's conviction is affirmed.

KURT S. ODENWALD, P.J., and GLENN A. NORTON, J., Concur.