**STATE of Missouri, Respondent,**

v.

**Jean A. CLAY, Appellant.**

**No. WD 41069.**

Missouri Court of Appeals,
Western District.

Sept. 26, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 31, 1989.

Application to Transfer Denied
Dec. 12, 1989.

Charles Atwell, Susan Hunt, Kansas City, for appellant.

William L. Webster, Atty. Gen., Robert V. Franson, Asst. Atty. Gen., Jefferson City, for respondent.

Before CLARK, P.J., and LOWENSTEIN and BERREY, JJ.

LOWENSTEIN, Judge.

The defendant Jean Clay appeals from her jury conviction of murder second degree, § 565.021.1, RSMo.1986 and armed criminal action, § 571.015, RSMo.1986. She received twenty years in prison for the murder count and four years for armed criminal action with the sentences to run concurrently. Her points on appeal include: 1) a challenge to the sufficiency of the evidence to sustain the conviction of second degree murder: 2) that state's use of its peremptory challenges to exclude women from the jury violated the her constitutional right to equal protection and the right to a trial by an impartial cross-section of the community; 3) that the trial court erred in refusing to strike one of the jurors for cause; 4) that a psychiatrist should have been allowed to testify at trial on the battered woman syndrome; 5) that the court erred in refusing to submit certain instructions; and 6) that the court erred in admitting into evidence a photograph of the victim dressed in a Christmas suit.

A person commits the crime of murder in the second degree if he "Knowingly causes the death of another person or, with the purpose of causing serious physical injury to another person, causes the death of another person." 565.021.1, RSMo.1986. The verdict director for this case, instruction No. 5, read as follows:

As to count I, if, you find and believe from the evidence beyond a reasonable doubt:

First, that on or about January 14, 1987 in the County of Jackson, State of Missouri, the defendant caused the death of Tina Stuart by shooting her, and

Second, that the defendant knew or was aware that her conduct was causing or was practically certain to cause the death of Tina Stuart, and

Third, the defendant did not do so under the influence of sudden passion arising from adequate cause

then you will find the defendant guilty of murder in the second degree, unless you find and believe from the greater weight of credible evidence that the defendant is not guilty by reason of mental disease of defect excluding responsibility as submitted in Instruction No. 15.

In examining for sufficiency of the proof, "we accept as true all evidence, direct or circumstantial, and all reasonable inferences supportive of the verdict and disregard those portions of the record contrary to a finding of guilt.... Our function is not to weigh the evidence, but rather to determine whether there was sufficient proof from which the jury could reasonably have found defendant guilty as charged." *State v. Turner*, 623 S.W.2d 4, 6 (Mo. banc 1981).

The evidence most favorable to the verdict is as follows: The defendant married John Clay in 1968. Roshawn, the couple's only child, was born shortly after the marriage. The couple had marital problems, including physical confrontations during which John would hit his wife. The defendant filed for divorce in 1985. At that time, John moved in with his mother. The defendant and Roshawn maintained a home at 7400 Tracy in Kansas City. In 1986, John moved in with Tina Stuart, the victim, but he continued to stop by the defendant's home.

Even before John moved in with Tina there were confrontations between the victim and the defendant. John testified that in October 1985, he was driving with Tina at 47th and Troost when the defendant pulled up beside his car and shot at the vehicle. After a brief car chase, John confronted the defendant and was able to obtain the weapon. Later, the police were called about the incident. They found the weapon in a trash can near the place of the assault.

There were several harassing phone calls back and forth between the victim, the defendant, and John. During one such phone call, Jean told John that she was going to "kill the bitch [Tina]." The defendant also called Tina's mother and threatened to kill her and her daughter. There were also several face-to-face confrontations between the victim and the defendant.

John testified that during the evening of January 13, 1987, he went to visit his daughter because she was leaving for school in Columbia, Missouri the next morning. He and the defendant had an argument. Eventually, she locked him out of the house and called the police.

On the morning of January 14, 1987, John and Tina and Tina's sister, Jessie, stopped for gas at an Amoco station located at 6401 Troost. Tina got out of the car to pay, while John pumped the gas. Jessie remained in the car. Because the windows were rolled up and the radio was playing, Jessie could not hear anything. She did, however, see the defendant shoot her sister. As John was pumping gas, the defendant pulled up in her car and confronted him. She questioned John as to Tina's whereabouts. John testified that he ignored her and didn't say anything. The defendant "laughed, she went back to her car and then she went in her pocket book, a large bag and came back with this revolver and she waved the gun and then she pointed at me [John] and asked me again, where was the little bitch at. And I still didn't answer, so by that time, Tina started coming out of the service station and she turned and I quess [sic] she seen her and she walked about 2 or 3 steps toward her and motion and said a few words and shot her." The victim was not carrying a weapon.

Immediately after the shooting the defendant pointed the gun at John, her daughter intervened saying "Don't shoot my daddy." The defendant then went over to John's car and told Tina's sister to get out. The defendant wanted to know if Jessie was the mother. Roshawn explained that Jessie was not the mother, to which the defendant remarked "Well tell your mother, she's next."

Several minutes later, a police officer arrived at the Amoco station. He saw Tina lying on the ground. He approached the woman to check her physical condition, but before he could reach her the defendant

stepped up and started kicking her side. After subduing Jean who was belligerent to the officer, he found a gun in her hand. Tina was transported to the hospital and died. It was stipulated that Tina Stuart died as a result of one gun shot wound that entered her chest and went through her heart. It was also stipulated that the "slug" that was recovered from the body of the victim was the same slug that was fired from the gun recovered from the defendant. The defendant admitted killing Tina and stated that "It just happened." Her theory was this was an accident following her problems with John, and when she saw the two of them at the gas station she got the gun out of her purse when she talked to John and the victim "busted out," gave a silly little giggle, and the gun went off.

■ Her equal protection challenge to the prosecutor's use of peremptory challenges against women is founded on *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). That case prohibits the state from using its peremptory challenges in a racially discriminatory manner.

Clay asks this court to extend the breadth of *Batson* to recognize in Missouri an equal protection claim when the prosecutor uses peremptory challenges to strike women from a petit jury panel. Clay asks for a reversal because the state used all its strikes on women without giving any explanations. Five women, however, served on the jury which brought back a guilty verdict.

At the outset she admits the "group excluded from the jury in *Batson* was a 'suspect class' for the purpose of equal protection and that women are not." The Supreme Court in *Batson* said the equal protection clause forbids challenge "solely on the account of their *race* ..." 476 U.S. at 89, 106 S.Ct. at 1719. (Emphasis supplied). *Batson* dealt with a black defendant convicted by an all white jury after the prosecutor had struck four blacks. *Id.* at 83, 106 S.Ct. at 1715.

The appellant's argument is rejected. *Batson* simply applies to race, and not to gender, and women are not a cognizable racial group. This is not the first appellate court to reject extension of *Batson* to instances other than racial discrimination. *See, e.g., U.S. v. Hamilton*, 850 F.2d 1038, 1042–43 (4th Cir.1988); *State v. Adams*, 533 So.2d 1060, 1063 (La.App.1988).

■ In a related point, Clay attacks the jury's gender makeup on sixth amendment grounds as not being a valid cross section of the community. Her objection at trial was only an equal protection grounds and was not preserved, making review here under plain error. Rule 29.12(b). The U.S. Supreme Court has held in *Lockhart v. McCree*, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986), the fair cross-section principle has not been used to invalidate the use of peremptory challenges to prospective jurors or to require petit juries to reflect the composition of the community at large. *Id.* In any event, the appellant can show no manifest injustice or resulting miscarriage of justice on this point if left uncorrected. *State v. Groves*, 646 S.W.2d 82, 83 (Mo. banc 1983).

■ Clay next asks for a reversal since venireperson Miller had initially indicated a bias toward the state. Miller had acknowledged friends in law enforcement and might have to be swayed toward a defendant's position, he subsequently told both the prosecutor and defense counsel he could be impartial and follow the court's instructions. The court's not striking Miller for cause does not amount to a ground for reversal. *State v. Lingar*, 726 S.W.2d 728, 733 (Mo. banc 1987); *State v. Keeven*, 728 S.W.2d 658, 669 (Mo.App.1987).

■ Clay's next point concerns the trial judge's refusing to allow her to present expert testimony to establish the statutory defense of the "battered spouse syndrome." Section 563.033, RSMo Supp.1988.

Her argument goes something like this: John Clay had repeatedly beaten and abused her, left for long periods of time, ridiculed her about her appearance and he had been a chronic drug abuser. When the defendant saw him pumping gas on the morning in question she had stopped and argued with him and went in her pocket book for the gun. At that instant the victim came out of the cashier's office,

"made a remark and laughed and the gun accidently went off." She contends her fear of John, as would be borne out by her expert witness, qualified her as a battered spouse and, "was relevant to a determination of whether the shooting was accidental."

The wording of § 563.033.1 clearly reveals the reason why Clay cites no authority for the relevancy of this evidence in the case at bar. "Evidence that the actor was suffering from the battered spouse syndrome shall be admissible upon the issue of whether the actor lawfully acted in self-defense or defense of another." Self-defense was not raised an issue on the charge of killing Stuart. Additionally the cases presented by Clay all apply this defense in cases where the battered spouse, in self-defense assaults the other spouse. In *People v. Minnis*, 118 Ill.App.3rd 345, 74 Ill.Dec. 179, 187, 455 N.E.2d 209, 217 (1983), the court said:

> It is true that in nearly all the reported cases the syndrome evidence has been utilized, if permitted, as a form of self-defense in a confrontational situation; *i.e.*, the battered woman kills her batterer during or immediately after an attack.

*Accord State v. Hodges*, 239 Kan. 63, 716 P.2d 563 (Kan.1986). The trial court did not abuse its discretion in excluding the expert testimony, *State v. Lint*, 657 S.W.2d 722, 725 (Mo.App.1983); on the battered spouse syndrome where the victim is a friend of the other spouse, and where there is no claim the defendant acted in self-defense.

■ The appellant next argues she should have been allowed to submit an instruction on second degree murder which would have allowed the jury to consider the "circumstances of this case," in determining her actions. This would have meant altering the prescribed MAI, which was used. The point is denied. Rule 28.02(c) and (f).

■ In her next point the appellant seeks a new trial because the trial court failed to submit an instruction based on excusable homicide by reason of accident. Her proposed instruction was patterned after MAI–Cr2d 2.28 (rescinded October 1, 1984). Suffice it to say the court's failure to utilize an instruction based on accident which instruction had been abolished due to a change in the law, was not error. *State v. Mallett*, 732 S.W.2d 527, 536 (Mo. banc 1987).

■ The most troubling point raised on appeal is why the prosecutor chose to offer in evidence a photograph of the victim taken shortly before the crime while Stuart was wearing a Santa Claus outfit. There being no contest on the issue of Clay shooting Stuart, any reasonable theory for the prosecutor's introduction of this photo over a relevancy objection, eludes this court. A reversal is not called for, but, the prosecutor is given an admonishment as to future litigation and future appeals to utilize a bit more restraint and judgment in presentation of the state's case. The attorney general, who represents the state on appeal, makes a gallant argument for disregarding this error since the evidence of guilt was strong; *State v. Hampton*, 648 S.W.2d 162, 166 (Mo.App.1983). This argument merely points to the obvious—the state didn't need this added bit of evidence to secure a favorable verdict. The decision to present this photo has to be questioned.

All points are denied. The judgment is affirmed.