THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN R. THOMAS, Defendant-Appellant.

Second District   No. 2—88—1200

Opinion filed August 8, 1990.

256

G. Joseph Weller and Manuel S. Serritos, both of State Appellate Defender's Office, of Elgin, for appellant.

Gary V. Johnson, State's Attorney, of Geneva (William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE INGLIS delivered the opinion of the court:

Defendant, John R. Thomas, was convicted by a jury of the offense of robbery in violation of section 18—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 18—1). Defendant now appeals, alleging that the prosecutor improperly exercised a peremptory challenge to keep a member of defendant's racial group from serving on the petit jury. We affirm.

The complaint filed against defendant alleged that he forcibly took a red handbag from the victim, Dorothy Fowler. The purse contained $13.65. We note that the defendant is a black male, and the victim is female; however, the record does not establish the victim's race.

Prior to *voir dire* examination, each prospective juror in defend-

ant's case completed a juror profile questionnaire. The questionnaire filled out by one prospective juror, Wanda T. Marshall, indicates that she was 25 years old, single, and the parent of one child. During *voir dire*, the trial court asked Marshall if she could serve as a fair and impartial juror in the defendant's trial, and she responded affirmatively. Defense counsel then interviewed Marshall and posed the following question:

> "Q. You yourself are black; my client is black. The victim is a woman. Is there anything about that set of circumstances that may prevent you from being fair and impartial in giving my client, Mr. Thomas, a fair trial?
>
> A. No."

Afterwards, the prosecutor began his interview of Marshall in the following manner:

> "Q. It is Miss Marshall?
> A. Yes.
> Q. Miss Marshall, have you been married in the past?
> A. No.
> Q. I take it, you have one child?
> A. Yes.
> Q. How old is he?
> A. Four.
> Q. Is he your natural child?
> A. Yes."

Among the other questions the prosecutor asked Marshall was whether she would convict the defendant if the case against him were proved beyond a reasonable doubt. Marshall indicated that she would.

The prosecutor then exercised a peremptory challenge against Marshall, and defendant objected. Defense counsel stated to the court that the prosecutor was required to state his reasons for excluding Marshall because "she is the only black person, out of forty-some odd people that have already been traipsed up here as prospective jurors." The prosecutor responded that, pursuant to *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, "the defendant must first make a *prima facie* showing" of the discriminatory use of a peremptory challenge. The prosecutor noted his agreement with defense counsel's position that a *prima facie* showing of discrimination had been made because the only black on the venire had been excused.

The prosecutor then proffered this explanation for excusing Marshall:

> "The court is aware from my questioning that Miss Marshall is the first and only unwed mother we have as a prospective ju-

ror. *** My attitude in picking jurors, Judge, is to pick persons who are conservative, fair, impartial people. It is my perception as a practitioner and as an individual that persons who are unwed mothers may lack the type of moral fiber or may have certain inherent prejudices due to their relaxed views on that type of act or lifestyle, so as to, in my opinion, warrant them unsuitable in a criminal case."

The prosecutor also stated that he felt Marshall was hesitant in answering his questions, but he restated that his "first and foremost rationale" for excusing Marshall was "her status as an unwed mother."

Defense counsel responded that the prosecutor's explanation indicated that Marshall was also improperly challenged with regard to her sex and marital status. He contended that the prosecutor's explanation was "a cop-out to get out of the racial issue." He further noted that Marshall "did not hesitate on hardly any questions" and that "she was emphatic as to her ability to remain fair and impartial as a juror." The trial court responded:

> "THE COURT: Well, gentlemen, I have heard both sides of this now and I feel what you say, [defense counsel] Sowa, is correct. She has indicated her willingness to serve. However, I do feel that [Assistant State's Attorney] Busch has responded pursuant to *Badson*, [*sic*] and, as weak as you may feel his response is, I think it is sufficient to avoid the fact that it is purely on a racial basis."

The court then denied the motion and allowed Marshall to be excused.

The jury ultimately returned a verdict of guilty. Defendant moved for a new trial on the basis that, *inter alia*, the prosecutor improperly exercised a peremptory challenge against a juror of defendant's race. The trial court denied the motion and sentenced defendant to four years' imprisonment. Defendant now appeals.

Initially, we note that the record on appeal did not originally contain the juror profile questionnaires completed by the prospective jurors, and they may not have been part of the record in the trial court. Defendant, subsequent to the filing of both parties' briefs, sought and was granted leave to supplement the record on appeal with the questionnaires. In a supplemental brief, the State contends that leave to supplement the record was improperly granted because of the lateness of the request and that this court should strike the orders granting such.

■■ ■ Supreme Court Rule 329 (107 Ill. 2d R. 329) permits the amendment of a record where there are material omissions or inaccuracies or if the record otherwise is insufficient to present fully and

fairly the questions involved. (*People v. Span* (1987), 156 Ill. App. 3d 1046, 1053.) One of the objects of Rule 329 "is to allow the record on appeal to be amended to *** settle controversies as to whether the record on appeal accurately discloses what occurred at trial." (*People v. Petty* (1987), 160 Ill. App. 3d 207, 211.) However, where an amendment would be unfair to a party, the courts have refused to permit the amendment. (*Span*, 156 Ill. App. 3d at 1053.) Here, given the factual nature of the peremptory challenge issue, we conclude that it was necessary to add the questionnaires to the record, albeit tardy, in order for the issue to be fully and fairly decided on appeal; we do not find that the State was prejudiced by this and, thus, affirm our original order.

█▌█ We now turn our attention to the merits of the peremptory challenge issue. In *Batson v. Kentucky*, the Supreme Court recognized that "the peremptory challenge occupies an important position in our trial procedures." (*Batson*, 476 U.S. at 98, 90 L. Ed. 2d at 89, 106 S. Ct. at 1724.) The intentional exercise of such challenges to discriminate against jurors based on their race, however, violates the equal protection clause of the fourteenth amendment. (*Batson*, 476 U.S. at 91, 90 L. Ed. 2d at 84, 106 S. Ct. at 1720.) A defendant can make out a *prima facie* case of purposeful discrimination under *Batson* by showing that: (1) he belongs to a racial group capable of being singled out for differential treatment; (2) the State removed members of the defendant's race from the venire by using peremptory challenges; and (3) these facts and any other relevant circumstances raise an inference of purposeful discrimination. (*People v. Hope* (1990), 137 Ill. 2d 430, 452.) The fact that all of the members of the defendant's race have been excluded from the jury is relevant to this determination, although it is not in itself conclusive. *People v. Jones* (1988), 177 Ill. App. 3d 663, 668-69.

Here, the prosecutor did exercise a peremptory challenge against a juror of defendant's racial group. At the *Batson* hearing, the prosecutor conceded that defendant had made a *prima facie* showing of discrimination. The concession that a *prima facie* showing had been made makes it unnecessary for us to examine whether other relevant circumstances raise an inference of purposeful discrimination.

█▌ Once a *prima facie* showing has been made, the burden shifts to the State to come forward with a race-neutral explanation for challenging black jurors which is related to the case to be tried. The prosecutor's explanation need not rise to the level justifying a challenge for cause. (*Batson*, 476 U.S. at 97, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723.) The burden on the prosecution is not a heavy one. The State is, how-

ever, required to articulate which facts formed the basis of the allegedly discriminatory act. *People v. Harris* (1989), 129 Ill. 2d 123, 184.

■ The trial court then must decide if the defendant has established purposeful discrimination. (*Batson,* 476 U.S. at 98, 90 L. Ed. 2d at 88-89, 106 S. Ct. at 1724.) The trial court's findings in this context will only be reversed if they are against the manifest weight of the evidence. (*Harris,* 129 Ill. 2d at 175.) Trial judges are especially well suited to make this determination because they are familiar with local conditions and prosecutors and can draw upon their power of observation and judicial experience as a guide in distinguishing a true case of discrimination from a false one. *People v. Evans* (1988), 125 Ill. 2d 50, 67.

The prosecutor in the instant case explained that he exercised a peremptory challenge against Marshall not because she was black, but because she was an unwed mother. This status, the prosecutor opined, indicated that the witness lacked the "moral fiber" necessary to sit as a juror in a criminal case. We stress that the issue in this cause is not whether we agree with the prosecutor's generalization regarding unwed mothers or whether we find it, in fact, an unfortunate and narrow-minded prejudice as argued by defendant. Instead, our task is to evaluate the trial court's finding that this belief actually motivated the peremptory challenge and was not just a pretext for racial discrimination. See *Harris,* 129 Ill. 2d at 178.

Furthermore, the prosecutor's belief does not need to be proved demonstrably true either in general or in regard to the particular witness excluded. These are merely two important factors that the trial court should consider in evaluating the legitimacy of the State's explanation. (*Harris,* 129 Ill. 2d at 177-78.) The touchstone again is whether the prosecutor's opinion about the group to which the witness belongs, correct or not, actually motivated the peremptory challenge or whether it was merely pretextual.

■ The trial court here concluded that the prosecutor had sufficiently "responded pursuant to *Badson* [sic]." The court recognized that defense counsel might have viewed the response as "weak," but the court felt the explanation was "sufficient to avoid the fact that [the challenge was founded] purely on a racial basis." We cannot conclude that the trial court's finding, based on its assessment of the credibility of the prosecutor's explanation, was against the manifest weight of the evidence.

Defendant argues that several factors indicate that the prosecutor's stated rationale was merely pretextual. First, defendant notes that the prosecutor's viewpoint is without merit with regard to unwed

mothers in general and specifically with regard to Marshall. However, as we have already stated, whether the prosecutor's explanation for the exercise of a peremptory challenge is well founded is but a factor in the central inquiry regarding whether the explanation is genuine or simply pretextual.

In *People v. Harris*, for example, one prospective juror was challenged because "she lived in Hyde Park, a neighborhood in Chicago whose residents were more scholarly and open to new ideas," a group the prosecutor felt would be "less likely to base their findings of fact on the evidence." (*Harris*, 129 Ill. 2d at 176.) The Illinois Supreme Court held that, while it might not agree with such a generalization, the trial court could have determined that the explanation was not pretextual. (*Harris*, 129 Ill. 2d at 178.) Here, the trial court also apparently did not embrace the veracity of the prosecutor's belief, but it concluded that the peremptory challenge was, in fact, motivated by the prosecutor's generalization about unwed mothers.

Second, defendant notes that the prosecutor did not explore the issue of unwed parenthood with any prospective juror except Marshall, the sole black on the venire. However, no other prospective juror indicated on the questionnaire that he or she was both unmarried and a parent. Thus, no pretextual inference can be derived from the prosecutor's failure to ask other prospective jurors the same type of questions which were posed to Marshall.

Third, defendant notes that Marshall expressed her willingness to find defendant guilty if the prosecutor proved his case beyond a reasonable doubt. This is not dispositive. Though a minority venire person may otherwise possess all the traits the State seeks in a juror, he may possess an additional trait which makes him undesirable. *Harris*, 129 Ill. 2d at 180.

Finally, defendant contends that the prosecutor's peremptory challenge violated not only defendant's rights but also Marshall's rights as well. Specifically, defendant contends that Marshall was discriminated against on the basis of her race and sex.

It is true that the Supreme Court has stated that "[r]acial discrimination in selection of jurors harms not only the accused whose life or liberty they are summoned to try," but also the excluded juror as well. (*Batson*, 476 U.S. at 87, 90 L. Ed. 2d at 81, 106 S. Ct. at 1718.) Here, we have concluded that the trial court could properly have found that the prosecutor's explanation for challenging Marshall was not pretextual. In other words, the exercise of the peremptory challenge was not racially motivated. Defendant offers us neither explanation nor authority indicating that a different conclusion can be reached by analyz-

ing the purported racial discrimination from the viewpoint of the prospective juror; nor does defendant cite any authority that he may advance a juror's interest to support his own equal protection claim under *Batson*.

Moreover, the *Batson* procedure is designed to ferret out violations of the the equal protection clause, and *Batson* addresses only discrimination based on race, not sex. (*People v. Crowder* (1987), 161 Ill. App. 3d 1009, 1013; see also *United States v. Hamilton* (4th Cir. 1988), 850 F.2d 1038, 1042; *State v. Adams* (La. App. 1988), 533 So. 2d 1060, 1063.) Defendant cites no cases in which the *Batson* procedure has been applied to purported sexual discrimination. While the underrepresentation of one gender on the venire might violate the sixth amendment's requirement that the venire be composed of a fair cross-section of the community (*Duren v. Missouri* (1979), 439 U.S. 357, 360, 58 L. Ed. 2d 579, 584, 99 S. Ct. 664, 666), the fair cross-section requirement does not apply to the petit jury (*Holland v. Illinois* (1990), 493 U.S. 474, 478, 107 L. Ed. 2d 905, 915, 110 S. Ct. 803, 806). Thus, we find no authority which would allow defendant to raise a challenge of sex-based discrimination in the selection of the petit jury.

Accordingly, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

REINHARD and McLAREN, JJ., concur.