**STATE of Missouri, Respondent,**

v.

**George PULLEN, Appellant.**

**George PULLEN, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 56820.**

Missouri Court of Appeals,
Eastern District,
Division Two.

June 18, 1991.

**464**

Henry B. Robertson, St. Louis, for appellant.

William L. Webster, Atty. Gen., Robert V. Franson, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant, George Pullen, appeals from his jury trial conviction of the offense of first degree murder, RSMo § 565.020, and his resulting sentence of life imprisonment without probation or parole. He also appeals the denial of his Rule 29.15 motion without an evidentiary hearing. We remand.

The evidence presented at trial revealed that appellant's mother, Betty Pullen, lived with the victim, Ed Adams. Betty Pullen had four sons: the appellant, Bobby, Mark and Earl. The evidence was fairly clear that, although Betty Pullen's sons got along with Ed Adams on occasion, these occasions were rare. Indeed, the relationship between the victim and two of the Pullen boys—the appellant and Bobby—was filled with near constant fighting and death threats.

The bad blood between the parties came to full boil in November of 1987. At that time, the apartment in which the victim and Betty Pullen lived caught fire and was partially destroyed. The victim accused appellant and Bobby Pullen of setting the fire and threatened to put out warrants for their arrest. Partially for this reason, appellant, Bobby and Bobby's girlfriend, Tanya Barton, left St. Louis to visit appellant's aunt in Vanduser, Missouri.

Tanya Barton told police that, throughout their week long visit in Vanduser, appellant talked about how he was going to kill the victim. She also testified that he continued to discuss this during their return trip to St. Louis.

Upon returning to St. Louis, the brothers and Miss Barton went to the home of Alphonso Reynolds, a friend of the appellant's and Bobby's. The brothers carried several guns and a knife with them. Bobby Pullen, handling a rifle, patted the breach of the weapon and said it was the victim's "Christmas present." Soon thereafter the brothers left for the victim's apartment.

Earl and Betty Pullen were watching television when the appellant and Bobby Pullen arrived. The victim had retired to his bedroom and was laying in bed. Evidence at the trial revealed that the group discussed their plans for killing the victim, Betty saying she did not want the victim killed in the apartment. It was finally decided that Earl would tell the victim that someone was out by the victim's pickup truck messing around with it and Bobby would wait outside for the victim and kill him. For some unknown reason, this plan did not come to fruition. Instead, the appellant went back to the victim's bedroom and, after a struggle, stabbed him twice. The group then left the apartment.

Later in the evening, Earl and Betty called the police and reported the stabbing. The police investigated the report and found Ed Adams dead in his apartment. The police then put out a bulletin over the radio indicating that they were looking for appellant and Bobby Pullen. A foot chase after the two brothers ensued, during which appellant fired several shots at police officers. The two brothers were soon apprehended and put into custody.

Appellant was indicted on several charges, including first degree murder, on February 3, 1988. The jury trial on the first degree murder charge was held on April 3, 1989, and a verdict of guilty was rendered. Appellant was sentenced, on April 12, 1989, to life imprisonment without probation or parole. On October 12, 1989, appellant filed an unverified Rule 29.15 motion seeking to vacate, set aside or correct his judgment or sentence. A verified amended motion was filed on December 27, 1989. On January 19, 1990, appellant's Rule 29.15 motion was denied due to appellant's failure to verify his motion. This appeal followed.

On September 11, 1990, this court handed down its opinion suggesting the appropriateness of a remand to the trial court for a *Batson* hearing. This opinion addressed two issues: 1) We held that appellant, a white male, had standing to challenge the State's use of peremptory challenges against black members of the venire under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); and 2) we held that *Batson* applied to gender based peremptory strikes as well as those based on race. Recognizing the importance of these issues, we transferred the case to the Missouri Supreme Court.

On April 9, 1991, the Missouri Supreme Court retransferred this case to our court. In its order retransferring the case, the Missouri Supreme Court ordered us to reconsider our opinion in light of *Powers v. Ohio*, —— U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). While *Powers* addressed the standing issue, neither *Powers* nor the order retransferring this case to our court addressed appellant's contentions regarding *Batson's* application to gender based peremptory strikes. We now address appellant's claims.

One of appellant's claims of error is that the trial court erred in overruling his *Batson* challenge to the removal of six black venirepersons. The appellant also raises a *Batson* issue regarding the State's removal

of seven women from the venire. We note that appellant failed to argue either of these issues in his motion for a new trial but we review them for plain error.[1]

The record reveals that the original venire consisted of thirty-seven persons. The sitting jury was selected from the first thirty persons with alternates selected from the remaining seven persons. Of the first group, twenty-one persons were white and nine were black. In addition, fifteen of the persons in the first group were male and fifteen female. In the second group, six persons were white and one was black. In the second group, there were three males and four females.

The final jury consisted of eleven whites and one black juror. The gender composition of the jury was seven females and five males. The defense raised a *Batson* challenge to the venire on the basis of sex and, at the court's behest, also raised a *Batson* challenge on the basis of race. The court noted that the State had struck six blacks and nine females but held that the appellant, a white male, had no standing to challenge the State's removal of blacks and females from the venire under *Batson*. Although the court offered the State an opportunity to explain its strikes, the State declined, stating that it was sure that the trial court's decision was correct and noted that, if the need arose, it had extensive notes on the strikes.

In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court of the United States prohibited the discriminatory use of peremptory challenges. The court also provided a set of standards for assessing a prima facie case of discriminatory removal of jurors from the venire:

> To establish such a case, the defendant first must show that he is a member of a cognizable racial group ... and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on

---

1. Appellant did raise fair cross-section arguments in his motion for a new trial but abandoned those on appeal and now raises equal protection claims under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate" ... Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

*Batson*, 476 U.S. at 96, 106 S.Ct. at 1723 (citations omitted). The State has seized upon the language "the prosecutor has exercised peremptory challenges to remove from the venire members of the *defendant's race*" to further its claim that the appellant has no standing to raise a *Batson* challenge. We note that the Western District of the Missouri Court of Appeals has adopted this rationale to deny standing to white defendants. *State v. Bruce*, 745 S.W.2d 696, 697 (Mo.App., W.D.1987); *State v. Bolanos*, 743 S.W.2d 442, 448 (Mo. App., W.D.1987). Although these cases are supported by the language of *Batson*, they ignore one of the main purposes behind it.

"Racial discrimination in selection of jurors harms not only the accused whose life or liberty they are summoned to try. Competence to serve as a juror ultimately depends on an assessment of individual qualifications and ability impartially to consider evidence presented at a trial.... A person's race simply is unrelated to his fitness as a juror.... by denying a person participation in jury service on account of his race, the State unconstitutionally discriminated against the excluded juror." *Batson*, 476 U.S. at 87, 106 S.Ct. at 1717–18. *Batson*, thus, protects not only the rights of the defendant, but also the rights of the excluded juror. In addition, *Batson* helps to prevent the use of such selection procedures because they "undermine public confidence in the fairness of our system of justice." *Batson*, 476 U.S. at 87, 106 S.Ct. at 1718.

*Batson* sought, thus, to serve multiple ends: To protect the individual defendant, to protect the rights of excluded jurors and to protect the public confidence in the fair-

ness of the judicial system. In *Powers v. Ohio*, —— U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), the United States Supreme Court addressed one of the questions before us today: Who is the proper party to challenge the unconstitutional exclusion of a venireperson?

In *Powers*, a white male was indicted on two counts of aggravated murder. *Powers*, —— U.S. at ——, 111 S.Ct. at 1366–67. During the jury selection process, Powers objected to the prosecutor's use of peremptory challenges to exclude black venirepersons from the jury. The trial court overruled the objections and excluded the jurors. *Id.* Powers was convicted and sentenced to fifty-three years to life imprisonment.

On appeal, Powers claimed that the exclusion of the black venirepersons violated the equal protection clause of the Fourteenth Amendment to the United States Constitution. *Id.* The United States Supreme Court held that an individual juror, while not possessing a right to sit on any particular case, did have the right not to be excluded from a jury on account of race. *Id.* at ——, 111 S.Ct. at 1369–71. The court further recognized that the defendant had standing to challenge the exclusion of black venirepersons. "To bar petitioner's claim because his race differs from that of the excluded jurors would be to condone the arbitrary exclusion of citizens from the duty, honor, and privilege of jury service." *Id.* at ——, 111 S.Ct. at 1373. The appellant below, therefore, had standing to challenge the removal of black venirepersons from his venire.

This does not bring our analysis to an end, however. Appellant has also challenged the exclusion of several venirepersons based on gender discrimination.

Several states that have addressed a *Batson* challenge based on gender discrimination have held that *Batson* only applies to racial discrimination. *Hannan v. Commonwealth*, 774 S.W.2d 462 (Ky.Ct.App. 1989); *People v. Crowder*, 161 Ill.App.3d 1009, 113 Ill.Dec. 798, 515 N.E.2d 783 (1987); *United States v. Hamilton*, 850

F.2d 1038 (4th Cir.1988). In addition, the Western District has held that gender based discrimination is permitted in the selection of juries. *State v. Clay,* 779 S.W.2d 673, 676 (Mo.App., W.D.1989). The basis of these holdings is either that the defendant has no standing to challenge the gender based discrimination, *People v. Crowder,* 161 Ill.App.3d 1009, 113 Ill.Dec. 798, 515 N.E.2d 783 (1987) or that *Batson* only applies to racial discrimination. See *Hannan,* 774 S.W.2d 462 (Kent.App.1989); *Clay,* 779 S.W.2d at 676.

After *Powers,* there can be little doubt that, if *Batson* applies to gender discrimination, the appellant has standing to raise the challenge. The sole question presented herein is whether *Batson* applies in cases of claimed gender discrimination.

The judicial system has a long history of excluding jurors from service on the basis of gender. Under English common law, women were excluded from almost all jury service due to "propter defectum sexus," a defect of sex. See 3 W. Blackstone Commentaries * 362. In the early history of Missouri, statutory law described a "qualified juror" as a "male citizen of the state." RSMo § 6060 (1889). It was not until 1898 that the State of Utah first permitted women to serve on juries. Utah Rev.Stat.An. Tit. 35 § 1297 (1898).

However, the exclusion of women from juries continued long after women were deemed "qualified" to serve. While purposeful exclusion of black citizens from the venire was deemed unconstitutional as far back as 1880, *Strauder v. W. Virginia,* 100 U.S. 303, 25 L.Ed. 664 (1880), it took almost one hundred more years before the Supreme Court held that state statutes having the effect of excluding women from juries were unconstitutional. *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). Indeed, in *Strauder,*

the Supreme Court indicated in dicta that limiting jury service to men *was* constitutional. *Strauder,* 100 U.S. at 308–09.

The Supreme Court has not yet applied the equal protection guarantees and the *Batson* case to gender based strikes. However, we do not see any grand distinction between race discrimination and gender discrimination that makes one less offensive than the other. Venirepersons excluded solely on the basis of gender feel no better than those excluded on the basis of race. Their perception of the judicial system and their confidence in its fairness is no less weakened. Such jurors are no less harmed than those struck for racial reasons.

▉ Nevertheless, this court finds itself firmly bound by the overwhelming weight of precedent holding that *Batson* applies no further than the parameters of racial discrimination. See *U.S. v. Hamilton,* 850 F.2d 1038 (4th Cir.1988); *Stariks v. State,* 572 So.2d 1301 (Ala.Crim.App.1990); *People v. Thomas,* 201 Ill.App.3d 255, 147 Ill. Dec. 262, 559 N.E.2d 262 (1990); *Hannan v. Commonwealth,* 774 S.W.2d 462 (Ky.Ct. App.1989); *State v. Adams,* 533 So.2d 1060 (La.Ct.App.1988); *State v. Clay,* 779 S.W.2d 673 (Mo.App., W.D.1989); *State v. Culver,* 444 N.W.2d 662 (Neb.1989); *Rhode Island v. Oliviera,* 534 A.2d 867 (R.I.1987).

In addition, the Western District of this court has previously ruled that *Batson* does not extend to gender based peremptory strikes. *State v. Clay,* 779 S.W.2d 673, 676 (Mo.App., W.D.1989). While we feel that, logically, *Batson* should extend to gender based strikes, we are loath to quickly disagree with our sister district with such a paucity of precedent to rely on.[2]

Since we find that the defendant has standing to raise *Batson* challenges on the basis of racial discrimination, we must remand this case to the trial court for an

---

**2.** This court recognizes that other jurisdictions have applied *Batson* to gender based peremptory strikes. Such cases are inevitably based, however, on state constitutions. *State v. Gonzales,* 808 P.2d 40 (N.M.App., 1991); *State v. Irizarry,* 142 Misc.2d 793, 536 N.Y.S.2d 630 (N.Y.App.Div.1988). We further note that the

Ninth Circuit Court of Appeals recently applied *Batson* to gender based strikes. That opinion, however, was recently taken for rehearing. *U.S. v. DeGross,* 913 F.2d 1417 (9th Cir.1990) (Reh'g. En Banc Granted, 930 F.2d 695 (9th Cir.1991)).

evidentiary hearing to determine whether the prosecutor used peremptory strikes in a discriminatory manner. The trial court must certify to this court a record of its proceedings. We will address appellant's other points if necessary at that time.

The cause is remanded for a hearing consistent with this opinion.[3]

CRIST and AHRENS, JJ., concur.

---

**3.** In his dissent in *Powers v. Ohio*, Justice Scalia stated that "[t]o affirm that the Equal Protection Clause applies to strikes of individual jurors is effectively to abolish the peremptory challenge." *Powers,* —— U.S. at ——, 111 S.Ct. at 1378. After *Batson* and its progeny, there can be little doubt that the peremptory challenge as recognized by Blackstone, see 4 W. Blackstone Commentaries *346–348, and Justice Story, see *United States v. Marchant,* 12 Wheat. 480, 483–84, 6 L.Ed. 700 (1827) has been, if not eliminated, seriously eroded. What appears to exist today is not the traditional challenge for cause with subsequent peremptory challenges, but rather two different forms of challenges for cause: The traditional challenge for cause which will be sustained where the venireman is unable to enter upon jury service with an open mind, free from bias and prejudice. *State v. Wheat,* 775 S.W.2d 155, 158 (Mo. banc 1989); and the *Batson* challenge for cause whereby the venireman may be removed for any reason, so long as that reason is not discriminatory.