**STATE of Missouri, Respondent,**

v.

**George PULLEN, Appellant.**

**George PULLEN, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. 73098.

Supreme Court of Missouri,
En Banc.

Dec. 18, 1992.

Rehearing Denied Jan. 26, 1993.

 

Deborah Wafer, Henry Robertson, St. Louis, for appellant.

William L. Webster, Atty. Gen., Joan F. Gummels, Asst. Atty. Gen., Jefferson City, for respondent.

COVINGTON, Judge.

Appellant George Pullen was charged by indictment with nine counts: murder in the first degree, § 565.020, RSMo 1986; two counts of armed criminal action, § 571.015; two counts of assault in the first degree, § 565.050, RSMo 1986; unlawful use of a weapon, § 571.030.1(4), RSMo 1986; stealing, § 570.030, RSMo 1986; arson in the

first degree, § 569.040, RSMo 1986; and arson in the second degree, § 569.050, RSMo 1986. The court severed the charge of murder in the first degree from the remaining eight counts. The case proceeded to jury trial. The jury convicted appellant of murder in the first degree and the court subsequently sentenced appellant, in accordance with the jury's recommendation, to a term of life imprisonment without probation or parole. The Missouri Court of Appeals, Eastern District, remanded, *State v. Pullen,* 811 S.W.2d 463 (Mo.App.1991), subsequently affirmed the conviction, then transferred the case here for this Court's consideration of the question of removal of persons from the venire on account of being female.

This case has acquired a history with respect to the question of peremptory challenges. On September 11, 1990, the eastern district rendered an opinion suggesting the appropriateness of a remand to the trial court for a *Batson* hearing on both race and gender discrimination. Recognizing the importance of its decision, the eastern district transferred the case to this Court. On April 9, 1991, this Court retransferred, ordering the eastern district to consider *Powers v. Ohio,* — U.S. —, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). The eastern district held under plain error review that a white defendant had standing to challenge the removal of African–American persons from the venire. *State v. Pullen,* 811 S.W.2d at 466. Following the weight of precedent at the time, the eastern district declined to extend the principles of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and its progeny to appellant's claim regarding the state's removal of women from the venire. *Pullen,* 811 S.W.2d at 467. The eastern district remanded the case to the circuit court to conduct an evidentiary hearing to ascertain whether the prosecutor used peremptory strikes in a racially discriminatory manner. *Id.* at 468–69.

On remand, the circuit court, to conserve judicial resources, heard evidence of discrimination against women in the exercise of peremptory challenges along with the challenges of discrimination on the basis of race. The circuit court found neither race nor gender discrimination. As earlier stated, the Missouri Court of Appeals, Eastern District, affirmed and transferred the case here.

Appellant's first two points on appeal assert denial of his right to equal protection under the law. His initial point alleges trial court error in denying his *Batson* motion on the basis that the state exercised five of its eleven peremptory challenges against African–American venirepersons in a racially discriminatory manner. Appellant's second point asserts trial court error in denying appellant's motion to quash the jury because the state exercised nine of its eleven peremptory strikes against female members of the venire in a discriminatory manner. Point three asserts trial court error in denying appellant's *Rule 29.15* motion without an evidentiary hearing.

## I

Appellant alleges that the state exercised five of its eleven peremptory challenges against African–American venirepersons in a racially discriminatory manner. Appellant failed, however, to preserve his claim of error in that he failed to include the claim in his motion for new trial. The Court will review for plain error. The decision of the trial court will be reversed only if this Court finds manifest injustice or miscarriage of justice. *Rule 30.20.*

In determining whether peremptory challenges have been exercised in a racially discriminatory manner, the prosecutor's explanation is deemed to be race-neutral unless a discriminatory intent is inherent in the explanation. *State v. Parker,* 836 S.W.2d 930, 934 (Mo. banc 1992). If the prosecutor articulates an acceptable reason for the strike, the defendant is required then to show that the state's proffered reasons for the strikes were merely pretextual and that the strikes were racially motivated. *Id.* The chief consideration is the plausibility of the prosecutor's explanations in view of the totality of the facts and circumstances surrounding the case. *Id.* The trial court's determination regard-

ing purposeful discrimination is a finding of fact that will not be overturned on appeal unless clearly erroneous. *State v. Hernandez*, — U.S. —, —, 111 S.Ct. 1859, 1872, 114 L.Ed.2d 395 (1991); *Parker*, 836 S.W.2d at 939 n. 7.

■ The state sought the death penalty against the nineteen year old appellant. The prosecutor stated that he struck African–American venireperson Elizabeth Hamilton because she wavered in responding to a question of whether her religion would allow her to impose the death penalty. The reason given by the prosecutor for striking Ms. Hamilton was not racially discriminatory, and appellant has not shown that the reason given by the prosecutor was pretextual.

■ The prosecutor also struck the following African–American venirepersons: Laurene Shanks, James Wafer, Virginia Burnett, and Ruby Mitchell. The prosecutor stated he struck Laurene Shanks because "she expressed very weak answers on her ability to consider the death penalty" and that "she had a serious problem with defendant's age with regard to the punishment of death." The record supports Ms. Shanks' inability to consider the death penalty for the defendant. When initially asked if she believed there were cases for which the death penalty was appropriate, Ms. Shanks responded negatively. She further stated that the fact that appellant was nineteen years old would influence her ability to impose the death penalty. Appellant asserts that a comparison of Ms. Shanks' responses with those of similarly situated white venirepersons such as Bruce Schenk, demonstrates the pretextual and invalid nature of the prosecutor's explanation. Appellant is mistaken. Mr. Schenk, when questioned about whether he had an opinion on the death penalty, stated: "It has its place," then stated that he would be able to consider the death penalty as a punishment even given the age of the

defendant. Thus, Mr. Schenk's responses were not similar to Ms. Shanks'.

■ The prosecutor stated he struck venireman James Wafer because he had three teenage sons, failed to disclose his previous arrest record, and showed a great distaste for the death penalty through his weak answers and facial expressions. Appellant contends that the record fails to show Mr. Wafer's facial expressions. Appellant ignores the trial court's considerable discretion in determining whether the demeanor of the venireperson is representative of the prosecutor's characterization. *State v. Antwine*, 743 S.W.2d 51, 64 (Mo. banc 1987). The trial court made findings that its own observations of demeanor refuted appellant's claims of intentional discrimination. Appellant further asserts a comparison of similarly situated white venirepersons shows the pretextual nature of the prosecutor's stated reasons. Appellant argues that several other white venirepersons either had teenage sons, gave similar answers to questions regarding the death penalty, or failed to disclose their arrests without being struck.[1] Although it is correct that some of the other venirepersons shared characteristics cited by the prosecutor, no one other venireperson possessed all of the characteristics that the prosecutor cited regarding Wafer. Considering the totality of circumstances and the cumulative reasons given by the prosecutor for striking Mr. Wafer, this Court cannot find that the trial court was clearly erroneous in its determination.

■ The prosecutor stated he struck venirepersons Virginia Burnett and Ruby Mitchell because of their distaste and dislike for the death penalty. Appellant postulates lack of evidence in the record to support the prosecutor's explanation citing *Walton v. Caspari*, 916 F.2d 1352 (8th Cir. 1990); *Garrett v. Morris*, 815 F.2d 509 (8th Cir.1987); and *State v. Butler*, 731 S.W.2d

---

**1.** Appellant also contends that the use of closed arrest records to strike a venireperson violates the Fifth, Sixth, Eighth, and Fourteenth Amendments. Mr. Wafer received a suspended imposition of sentence in 1979 for a misdemeanor. For any suspended imposition of sentence imposed before 1981, the party must make a motion before the sentencing court to close the records. § 610.106, RSMo 1986. Appellant fails to demonstrate that Mr. Wafer's arrest record was closed. This Court will not, therefore, consider the issue.

265 (Mo.App.1987). After review of the entire record, this Court finds that the prosecutor's reasons for striking Ms. Burnett were race-neutral, legitimate, specific, and supported by the record. Although the record is sparse on Ms. Mitchell's view of the death penalty, the trial court credited the prosecutor with a hunch regarding Ms. Mitchell's views based upon her demeanor. *Batson* leaves room for the state to exercise peremptory challenges on the basis of the prosecutor's hunches. *Antwine,* 734 S.W.2d at 65. The trial court's finding that the state did not exercise its peremptory challenges against African–American venirepersons in a racially discriminatory manner is affirmed.

## II

■ Appellant's claims of error with respect to discriminatory peremptory strikes on the basis of venirepersons being female are not preserved. To preserve a constitutional question for review, a matter must be raised at the first opportunity, the sections of the constitution alleged to have been violated must be specifically asserted, the matter must be preserved in the motion for new trial, and the questions must be adequately covered in the briefs. *State v. Flynn,* 519 S.W.2d 10, 12 (Mo.1975). The reasons set forth in *Flynn* for the requirements of preserving and briefing an issue involving a constitutional question are well-settled and need not be reiterated. At trial, appellant raised what he termed *Batson* and fair cross-section arguments. Appellant raised no independent state constitutional grounds. The circuit court properly rejected appellant's fair cross-section arguments and on the basis of lack of standing under the law at the time declined to sustain the *Batson* challenge as it might extend to gender-based strikes. In his motion for new trial appellant raised due process and fair cross-section arguments with respect to the United States Constitution

and mentioned sections of the Missouri Constitution not relevant to the issue. On appeal appellant raises equal protection claims under the Fourteenth Amendment, *Batson,* and under Art. I, §§ 2 and 22(b), of the Missouri Constitution. Under the holding of *Flynn* this Court should therefore decline to review the constitutional questions.

The Court nevertheless faces conflicting considerations with respect to whether it is appropriate to afford plain error review of appellant's Fourteenth Amendment claims with respect to whether *Batson* extends to discrimination against females [2] in the exercise of peremptory strikes. On the one hand, there are undoubtedly similar challenges being raised in the trial courts of this state, and the question has been addressed by the Missouri Court of Appeals, Western District.[3] On the other hand, the United States Supreme Court has thus far declined to answer the question, although there is a division in the federal courts of appeals on the issue. *See United States v. De Gross,* 960 F.2d 1433 (9th Cir.1992); *United States v. Hamilton,* 850 F.2d 1038 (4th Cir.1988). Furthermore, in spite of a diminishing ability to exercise peremptory challenges, there remains the important position of peremptory challenges in our jury system—freely to reject venire members for a real or imagined partiality. *Swain v. Alabama,* 380 U.S. 202, 219–220, 85 S.Ct. 824, 835–36, 13 L.Ed.2d 759 (1965). *See also Georgia v. McCollum,* —— U.S. ——, —— —, 112 S.Ct. 2348, 2359–61, 120 L.Ed.2d 33 (1992) (Thomas, J., concurring); *see also State v. Parker,* 836 S.W.2d at 941 (Benton, J., concurring). Under these circumstances, this Court will follow the precepts of *State v. Flynn* and will leave decision of whether *Batson* should extend to discrimination against women for another day.

■ In caution, however, and being cognizant of the fact that the issue is unsettled

---

**2.** Would the equal protection clause of the United States Constitution prohibit discrimination against both genders, or only against women? *See State v. Parker,* 836 S.W.2d at 941 (Benton, J., concurring).

**3.** In *State v. Clay,* 779 S.W.2d 673 (Mo.App. 1989), the Missouri Court of Appeals, Western District, refused to extend *Batson* to peremptory challenges allegedly used to strike women from a petit jury panel.

in Missouri[4] and the federal courts, this Court has reviewed the record for plain error. If the holdings of *Batson* and its progeny were held to extend to women, there is no basis in the record for sustaining an equal protection claim on the basis of the venirepersons' being female. The record demonstrates that appellant objected to the state's peremptorily striking nine women. The record reflects that the prosecutor articulated nongender based reasons for striking all nine women. Appellant did not attempt to show that the prosecutor's peremptory strikes were pretextual as to five of the nine women; thus it is unnecessary to afford further review on the five.

Appellant contended that the reasons given by the prosecutor for striking venirepersons Laverne Merlotti, Laurene Shanks, Virginia Burnett, and Ruby Mitchell were pretextual. The prosecutor alleged all four women were struck because of their views or reactions to the death penalty. The state's reasons for striking Ms. Shanks, Ms. Burnett, and Ms. Mitchell were examined and the trial court's findings affirmed in Part I of this opinion, *supra*, under the racial discrimination review. The record also supports the prosecutor's allegation that Ms. Merlotti was struck because of her views on the death penalty.

As for appellant's claim under Mo. Const. art. I, §§ 2 and 22(b), it is raised nowhere below. The trial court did not have the opportunity to review the claim either through appellant's motion to quash the jury or on the motion for new trial. On appeal appellant has barely proffered his state constitutional claim. Although appellant makes reference to Judge Price's concurring opinion in *State v. Parker*, 836 S.W.2d at 942, the reference stands alone, utterly devoid of development or argument. With respect to the state grounds asserted, not one of the requirements of *State v. Flynn* has been met. Under these circumstances, this Court will not consider affording review under state constitutional grounds.

### III

Appellant's final point asserts trial court error in denying his *Rule 29.15* motion without an evidentiary hearing. Appellant timely filed a *pro se Rule 29.15* motion without notarization of his signature. Through appointed counsel, however, appellant timely filed a verified amended motion. The state concedes before this Court that the timely filing of the properly verified amended motion cured the absence of verification of appellant's *pro se* motion and joins appellant in requesting reversal and remand. An extended discussion is unnecessary.

### IV

The judgment on the direct appeal is affirmed. The motion court's judgment on appellant's *Rule 29.15* motion is reversed and remanded for further proceedings.

All concur.

---

4. It should be noted that § 494.400, RSMo Supp. 1990, prohibits exclusion from selection for possible jury service on account of sex.